ANGEL ARROYO RIVERA, demandante-apelante-apelado, *v.* GA-BRIEL ZAVALA, demandado, y PETRONA CRUZ VIUDA DE JACOBS, interventora-apelada-apelante.

No. 4715—*Sometido:* Marzo 20, 1929. *Resuelto:* Diciembre 11, 1929.

*Angel Arroyo Rivera,* abogado del demandante-apelante-apelado; *Blondet & Campillo,* abogados de la interventora.

El Juez Asociado Señor Texidor, emitió la opinión del tribunal.

Angel Arroyo Rivera siguió ante la Corte de Distrito de San Juan un procedimiento ejecutivo hipotecario contra Gabriel Zavala, en cobro de $679.46, intereses y costas, cantidades garantizadas con hipoteca sobre una finca urbana en Santurce, P. R. Se libró el requerimiento al deudor, para el pago, en la forma legal, y se diligenció por el márshal; no pagó el deudor; y se dictó una sentencia de remate, ordenándose la subasta de la finca hipotecada; se anunció en

forma la subasta, y se llevó a cabo en la fecha anunciada, adjudicándose la finca al acreedor ejecutante. Pero el deudor que había sido requerido para el pago, durante el término del requerimiento, otorgó una escritura en la que aparece vendiendo a Petrona Cruz, viuda de Jacobs, la misma finca hipotecada para responder al crédito de Arroyo Rivera; la fecha de esa escritura es 13 de diciembre de 1927; la del requerimiento es 16 de noviembre de 1927. De esa escritura de venta no aparece haber tenido noticia el ejecutante. Este supo, después de la subasta, de la existencia de tal escritura, cuando aún el márshal no le había otorgado la suya, ni puesto en posesión de la finca; y acudió a la corte para que se notificara a Petrona Cruz, y se la apercibiera de que si en el plazo de diez días no pagaba el importe de la hipoteca y liberaba la finca, se ordenaría la cancelación de su inscripción de compra de la misma; se ordenó así por la corte, se hizo la notificación, y transcurridos más de treinta días sin que la notificada pagara, el ejecutante pidió a la corte la orden y mandamiento de cancelación, que se concedió. Petrona Cruz, a los diez días de notificada, presentó a la corte una moción de intervención en el procedimiento, y cuando se dictó la orden de cancelación reprodujo tal moción con otra para que se dejara sin efecto la orden de cancelación; la corte declaró sin lugar la intervención, pero resolvió dejar sin efecto la orden de cancelación. De esta resolución, de 13 de julio de 1928, se ha apelado por el ejecutante. Aparece que Petrona Cruz apeló en cuanto a la negativa de intervención; pero no vemos que haya formalizado su apelación.

■■■ Una nota característica de nuestra Ley Hipotecaria, es la de previsión. Sería algo que se acercara a los límites de lo extraordinario que se hubiera dejado en la ley un vacío, que en un procedimiento en el que quizá se sacrifican algunos principios en favor de la rapidez y la seguridad del cobro del crédito, produjera una multiplicidad de litigios. Esto ocurriría si el deudor pudiera vender, y otra

persona comprar, sin riesgo alguno, la finca hipotecada, mientras se tramitara el procedimiento especial.

Para solucionar este problema, se hace necesario proceder con riguroso método y cuidadoso análisis.

En primer término conviene examinar el concepto de tercero. Y desde luego, establecer la diferencia que hay entre el tercero civil, con arreglo al Derecho general, y el tercero puramente hipotecario cuya esfera de actividad se encierra en el registro de la propiedad.

El Tribunal Supremo de España en buen número de decisiones ha declarado que aquel que conoce la existencia de un gravamen, o la situación jurídica de un inmueble, no es en realidad un tercero, en cuanto a ese gravamen o a esa situación. La ley no vive en un medio ambiente ficticio, sino en un conjunto de realidades. No basta, por sí solo, el elemento filosófico, el principio ético jurídico, para dar vida a la ley; ésta necesita, como necesita el cuerpo humano el aire para respirar, de los elementos históricos y circunstanciales. Por esa razón, el Tribunal Supremo de España en esas sentencias de que hablamos, ha puesto la mirada en las realidades de la vida; y si una persona ha venido percibiendo con sus sentidos los signos evidentes de una servidumbre, no puede, por una ficción legal, ser un tercero con respecto a ese gravamen. Aparte de ese punto de vista, muestran esas decisiones la íntima relación entre el Derecho Civil, y su rama la Ley Hipotecaria, pese a los que pretenden independizar ésta de aquél. Con relación al Derecho Civil, la Ley Hipotecaria es un menor que nunca alcanzará la mayoría de edad.

En cuanto al tercero hipotecario éste es el que se define en el artículo 27 de la ley.

"Art. 27.—Para los efectos de esta ley se considera como tercero aquel que no haya intervenido en el acto o contrato inscripto."

Tiene la definición una peligrosa sencillez, de la que han nacido empeñadas discusiones, y dudas legales que han requerido solución judicial. Pero conviene, ante todo, para

precisar conceptos, declarar que en este precepto la Ley hipotecaria ha hecho amplio reconocimiento de la existencia de un derecho superior a ella. Y así, el legislador ha empezado por declarar esto:

"Para los efectos de esta ley . . . ."

Es decir que sin.rozar los principios del derecho común, sin herirlos, ni subvertirlos, la hipotecaria ha definido *su tercero,* requiriendo un acto o contrato inscripto, propia condición del registro de la propiedad, y especial fuero suyo. No ha hablado la ley, en este artículo, exclusivamente de los que no son partes en el acto o contrato, sino, en términos más precisos, de los que no han *intervenido* en el mismo. Y el precepto no nos ofrece al tercero en la acepción que vulgarmente se le atribuye, cuando se dice del perjuicio de tercero, sino que lo mismo puede referirse al tercero favorecido por el registro. Prueba esta doble acepción el artículo 25 de la misma ley que lee así:

"Art. 25.—Los títulos inscriptos no surtirán su efecto en cuanto a tercero sino desde la fecha de la inscripción."

No se refiere, pues, a tercero a perjudicar solamente, sino a todo tercero.

Cuando la ley ha querido establecer el efecto de la inscripción *contra tercero* ha sido explícita y terminante. Así, en el artículo 29, al tratar de dominio u otro derecho real inscrito o anotado, dice que "surtirá efecto contra tercero. . ." Y en el artículo 35, al tratar de la prescripción, se repite la frase "no perjudicará a tercero." Y en el artículo 36, hablando de las acciones rescisorias y resolutorias, dice que "no se darán contra tercero que haya inscripto los títulos de sus respectivos derechos", concepto que completan los artículo 37 y 38. Y en el artículo 114 de la misma ley, cuando habla de la garantía hipotecaria por los intereses "con perjuicio de tercero". Y en el artículo 389, con relación a títulos inscribibles, y que no habiendo sido inscritos,

no pueden ser admitidos para hacer efectivo el derecho no inscrito, "en perjuicio de tercero".

En otros preceptos de la misma ley, ya no aparece el perjuicio de tercero, como exclusivo, sino que la aplicación del concepto de tercero puede ser para favorecer a éste, de una manera explícita o de una forma implícita, o lo mismo en favor que en perjuicio de la persona que ostente aquella calidad. Así, encontramos el artículo 97, que define concretamente el campo de acción del registro, preceptuando que la cancelación, en cuanto a las partes, no extingue, *por su propia y exclusiva virtud* los derechos inscritos, pero *en cuanto al tercero* que por efecto de ella haya adquirido o inscrito algún derecho, surte todos sus efectos: el mismo 36 antes citado, que también ofrece un tercero protegido: y los 112, 113 y 116, que sin nombrarlo específicamente contienen el concepto del tercero protegido.

¿Puede el comprador de un inmueble hipotecado, con hipoteca vencida según la inscripción lo indica, hacer valer el carácter de tercero, en lo que a la ejecución de la hipoteca afecta? ¿Puede ese comprador considerarse como una tercera persona, protegida por el precepto del artículo 17 o la del artículo 20 de la Ley Hipotecaria, y tener la inscripción a su favor la misma eficacia legal que en un caso corriente? Estos son los problemas más interesantes en este caso ante nosotros.

El artículo 17 de la Ley Hipotecaria dice:

"Art. 17.—Inscrito o anotado preventivamente en el Registro cualquier título traslativo del dominio o de la posesión de los inmuebles o de los derechos reales impuestos sobre los mismos, no podrá inscribirse o anotarse ningún otro de igual o anterior fecha por el cual se transmita o grave la propiedad del mismo inmueble o derecho real.

"Si sólo se hubiera extendido el asiento de presentación del título traslativo del dominio o de la posesión, no podrá tampoco inscribirse o anotarse ningún otro título de la clase antes expresada durante el término de treinta días, contados desde el siguiente al de la fecha del mismo asiento."

Y el artículo 20, como sigue:

"Art. 20.—Para inscribir o anotar los títulos en que se transfiera o grave el dominio o la posesión de bienes inmuebles o derechos reales, deberá constar previamente inscrito o anotado el derecho de la persona que otorgue o en cuyo nombre se haga la transmisión o gravamen.

"Los Registradores denegarán la inscripción de dichos títulos mientras no se cumpla este requisito, siendo responsables directamente de los perjuicios que causen a un tercero por la infracción de este precepto.

"  *        *        *        *        *        *        *  "

Nótase a primera vista, que el artículo 17 se refiere a títulos de igual o anterior fecha al de cuya inscripción se trata: esto quizá nos releva de hacer un detenido análisis del precepto legal. Pero no ocurre lo mismo con el artículo 20. Podemos, ante todo, asegurar que este artículo se escribió para circunstancias y estados normales, que no son los de casos como el que estudiamos.

El comprador de un inmueble gravado con hipoteca, se subroga, para los fines de la Ley Hipotecaria, en el lugar y personalidad del deudor. La ley ha salvado ciertos derechos de este nuevo dueño; así en el artículo 112, pierde la hipoteca su extensibilidad en lo que se refiere a los muebles permanentemente colocados en los edificios por el tercero, a ciertas mejoras, y a determinados frutos; y la excepción afirma y confirma la regla de responsabilidad del inmueble en lo que no esté expresamente exceptuado.

La finca responde, por virtud del contrato accesorio de hipoteca; y responde con absoluta abstracción de quien sea el poseedor; éste es el principio del artículo 105 de la Ley Hipotecaria.

"Art. 105.—La hipoteca sujeta directa o inmediatamente los bienes sobre que se impone, cualquiera que sea su poseedor, al cumplimiento de la obligación para cuya seguridad fué constituída."

Principio que aparece del Código Civil (artículo 1777 del de Puerto Rico, igual al 1876 del Español).

El que compra una finca hipotecada, hallándose inscrita

la hipoteca, sabe que el inmueble tiene un gravamen y una responsabilidad directa, y que ha de tener que hacer frente a esa responsabilidad en un momento determinado. Pero si compra cuando, según el registro, la obligación garantizada es exigible, acepta la consecuencia, y tiene inevitablemente que cumplir aquella obligación, si ha de conservar el inmueble, lo mismo que la cumpliría el deudor, en cuya personalidad se halla subrogado. Por virtud de la subrogación, nada de lo que ocurra con la obligación garantizada, le puede ser ajeno o extraño; la personalidad del primitivo deudor se ha fundido en la del comprador. ¿Puede éste ostentar el mismo carácter de verdadero tercero que tendría si hubiera adquirido una finca libre de gravámenes? ¿La inscripción a su favor, tiene el mismo carácter de excluyente que tendría la que produjera una compra o una adquisición limpia o exenta de aquellas responsabilidades? Evidentemente, no.

No puede decirse que este comprador ignoraba si la hipoteca había sido prorrogada o variada en alguno de sus términos. Para evitar algo semejante se escribió el artículo 144 de la Ley Hipotecaria, cuyo texto es como sigue:

"Art. 144.—Todo hecho o convenio entre las partes que pueda modificar o destruir la eficacia de una obligación hipotecaria anterior, como el pago, la compensación, la espera, el pacto o promesa de no pedir, la novación del contrato primitivo y la transacción o compromiso, no surtirá efecto contra tercero como no se haga constar en el Registro por medio de una inscripción nueva, de una cancelación total o parcial, o de una nota marginal, según los casos."

Si en el registro no aparece esa espera o prórroga, el subrogado se halla en el caso de pagar la obligación garantizada tan pronto como adquiere, si la obligación está vencida; es él el mismo deudor, y se halla en idénticas condiciones legales que el que le trasmitió. Y la inscripción que a su favor se haga, no tiene otra eficacia legal que la que tenía la a favor de su trasmitente y está sujeta a los mismos riesgos que aquélla, y entre ellos a ser destruída por la adjudicación que se haga en el ejecutivo hipotecario. Podría-

mos decir que si a las palabras "personas distintas", que aparecen en el artículo 20 de la Ley Hipotecaria, se les da su legítima acepción jurídica, ellas no son de aplicación al comprador subrogado en el lugar, obligaciones y derechos del deudor en un caso como el presente.

De que existe la subrogación da fe la redacción del párrafo último del artículo 175 del Reglamento para ejecución de la Ley Hipotecaria, que dice:

"Si durante la sustanciación del expediente pasare la finca o alguna de las fincas hipotecadas a manos de otro poseedor, éste, acreditando la inscripción de su título, podrá pedir que se le exhiban los autos en la escribanía, y el juez lo acordará, sin paralizar el curso del expediente, entendiéndose con él las diligencias ulteriores, como subrogado en el lugar del causante."

El precepto del Reglamento armoniza y concuerda con el del artículo 129 de la Ley Hipotecaria, que es como sigue:

"Art. 129.—Si antes de que el acreedor haga efectivo su derecho sobre la finca hipotecada pasare ésta a manos de un tercer poseedor, se entenderán directamente con éste todas las diligencias prevenidas en el artículo anterior, como subrogado en la personalidad del deudor."

Este concepto de la subrogación, trasmisora de derechos y obligaciones a quien antes no era parte en las mismas, es de puro Derecho Civil; y conforme a éste, el subrogado no es otra cosa que la continuación de aquél en cuyo lugar se puso por virtud de la subrogación; jurídicamente la personalidad del deudor no ha variado.

Pero en estos casos hay algo más que apuntar. El comprador de ese inmueble gravado con hipoteca, cuyo término de vencimiento, y de consiguiente exigibilidad aparece del registro, conoce esa situación. Y la sigue conociendo, porque la presentación de la reclamación ante la corte, es un acto público; y a más de la presentación, en estos procedimientos de ejecución hipotecaria hay una publicación de edictos, ordenada por la ley, y que hace conocida para todos, la

existencia del proceso. ¿Qué puede alegar el que bajo esas circunstancias compra el inmueble?

En estricta Ley Hipotecaria, el comprador en esas condiciones no tiene derecho a otra cosa que a pedir que se le muestren las diligencias e intervenir, dentro de los límites que a tal intervención se marcan por la ley y su reglamento.

Quizá sea menos fuerte el caso del que, durante un litigio compra bienes anotados preventivamente (artículo 71 Ley Hipotecaria). Y el derecho que le da la ley, es el de librar los bienes en el término de diez días a contar de la notificación; y de no hacerlo se procede a cancelar la inscripción que a su favor aparece en el registro.

Pudiera darse la solución de Ley Hipotecaria estricta. Pero podemos llegar a otros términos, aun en la hipótesis que ese comprador tuviera algún derecho a ir contra las consecuencias de la ejecución, y que pudiera alegar desconocimiento de las circunstancias; y que en la Ley Hipotecaria no existiera nada que favorezca al que adquiera en la subasta.

¿Sería preciso que el que adquirió en remate tuviera que seguir un pleito contra el comprador que adquirió durante el procedimiento, y en el tiempo en que el inmueble estaba legalmente sujeto a la subasta y remate? La respuesta en la afirmativa conduciría a dos males graves: al absurdo, y a la injusticia de parte de la ley.

Si examinamos el artículo 71 de la Ley Hipotecaria, que en un caso análogo, da al que compró pendiente el litigio el derecho de liberar, pero previene que si no lo hace en el tiempo fijado, se cancele su inscripción; si tenemos presente que en la sección 2 de la Ley para ejecución de sentencias (sección 5296 Compilación de 1911) se ha dispuesto que la orden para la ejecución de la hipoteca "tendrá toda la fuerza y efecto de un auto ordenando la posesión, tanto entre las partes interesadas en dicho juicio como entre éstas y cualesquiera otras personas que reclamasen en dicho juicio en virtud de cualquier derecho adquirido durante el mismo"; y

si, en fin, recordamos la facultad que el artículo 36 del Código de Enjuiciamiento Civil da al juez para adoptar un procedimiento por el que pueda cumplirse la ley; si vemos esto, podemos declarar que la solución de un conflicto de esta clase aplicando el mismo procedimiento del artículo 71 de la Ley Hipotecaria, haciendo la notificación al comprador, y si en el término de diez días no libera la finca, y ordenando la cancelación de su inscripción en el registro es un procedimiento legal, y equitativo.

La petición de la parte ejecutante en este caso, se ajusta a la teoría y al procedimiento que en términos generales hemos expuesto.

Bajo la regla que enunciamos, y la doctrina legal en que se funda, se han de resolver, en cuanto quepa, los señalamientos de error en esta apelación.

El primer error, según indica el apelante, consistió en permitir la intervención de Petrona Cruz. Creemos que el argumento del apelante es sólido. La intervención en el caso no era admisible, en cuanto ella entorpezca o detenga el procedimiento. El artículo 175 del Reglamento para la ejecución de la Ley Hipotecaria es claro y correcto; las reclamaciones que tengan que interponer el deudor o los terceros poseedores, y *los demás interesados* (cursivas nuestras) son objeto de un juicio ordinario en el que ellos tienen todas las necesarias garantías. Y el procedimiento ejecutivo hipotecario no termina con la subasta, sino con la posesión, la escritura y su inscripción.

En cuanto al segundo señalamiento de error, es así:

"La corte inferior cometió error al estimar conclusos los procedimientos sumarios habidos en el expediente ejecutivo y darle fuerza de sentencia judicial a una mera resolución de un centro administrativo de España, ignorada (*overruled*) por sentencias del Tribunal Supremo de España."

Es muy difícil fundar la decisión en un caso resuelto por la Dirección General de los Registros, en 8 de abril de 1893.

Debemos recordar que la Ley Hipotecaria para Cuba, Puerto Rico y Filipinas, que creó el procedimiento ejecutivo sumario, tiene fecha posterior a esa resolución: el Decreto es de 14 de junio de 1893. Y el caso que se cita por la corte no tiene las mismas circunstancias que el de autos. En aquél, el procedimiento fué el ejecutivo de la Ley de Enjuiciamiento Civil, y hubo una demanda de tercería fundada en títulos de fecha anterior a la hipoteca, y esos títulos eran de dominio, mientras el en que se fundó la otra parte arrancaba de un expediente posesorio; no existía en la ley un precepto como el del artículo 71 de la nuestra, ni la autoridad que crea el artículo 36 de nuestro código procesal. De esa Resolución hay un *"considerando"* que tiene cierta importancia, aunque no vemos que se avenga perfectamente con la solución que se da al caso. Es el que sigue:

"Considerando que la Ley Hipotecaria, atenta a consolidar el crédito territorial, ha tratado de simplificar los trámites judiciales que conducen a un acreedor hipotecario al pago de lo que se le adeuda; y por esto, cuando la finca ha salido de manos del deudor y se halla en las de un tercer poseedor, lejos de obligar al acreedor a seguir con éste un juicio declarativo, basta que le requiera de pago para que continúe el procedimiento ejecutivo, ora con el deudor, caso de desamparo, ora con él y el tercer poseedor, si éste se opusiese a la ejecución:"

La resolución, de la importancia que se le quiera dar para los registros, no tiene toda la fuerza que se le supone, para los tribunales de justicia. Estos han podido, y pueden, hacer declaraciones distintas, y aún contrarias, a las de cualquier centro directivo o administrativo. Así, en sentencia de fecha 24 de diciembre de 1904, el Tribunal Supremo de España, dijo:

"Considerando que los preceptos de la Ley Hipotecaria tienden fundamentalmente al objeto de que quien contrate sobre inmuebles o derechos reales pueda conocer, con relación al Registro, la extensión del derecho que adquiere, basándose en este principio todas las dis-

posiciones que regulan la materia de las hipotecas legales y voluntarias, no siendo procedente que las anotaciones de embargo hechas por virtud de lo mandado en un juicio ejecutivo se equiparen a aquéllas para el efecto de restringir los derechos del acreedor cuando la finca embargada se enajena por el dueño a un tercero: primero, porque la ley no autoriza semejante identidad; segundo, porque determinado en el Registro el origen y procedencia del embargo, es manifiesto que resulta claramente conocido su alcance, trascendencia y extensión que no es ni puede ser otra que asegurar todas las resultas del juicio ejecutivo, en consonancia con lo determinado en la ley de Enjuiciamiento civil; tercero, porque de otra suerte se ampararía, no el derecho de un tercero, que resulta suficientemente amparado con el conocimiento de la anotación y de su naturaleza, sino la mala fe del deudor, que podría burlar por el procedimiento de una enajenación los derechos del acreedor, barrenando las reglas más cardinales del procedimiento ejecutivo; y cuarto, porque tales anotaciones de embargo tienen en realidad la mayor analogía con las anotaciones de las demandas que se dirigen al objeto de reivindicar alguna finca o derecho real constituído sobre la misma, sabiendo quien la adquiere posteriormente el riesgo que corre si prospera la demanda.''

Encontramos que se ha cometido el error que se señala en segundo lugar.

Con lo que antes hemos dicho, es suficiente para declarar la realidad del tercer error señalado en esta forma:

''La corte inferior erró al no estimar que Petrona Cruz era una adquirente *pendent lite* y que tenía conocimiento presunto del vencimiento de la hipoteca y de los procedimientos sumarios para su cobro.''

Y sentados esos precedentes, es claro que el ejecutante, o el comprador en la subasta, no tienen que acudir al juicio ordinario. Y el declarar en otro sentido constituye el error que el apelante señala en cuarto lugar.

*Debe revocarse la resolución apelada, de 13 de julio de 1928.*

El Juez Asociado Señor Hutchison disintió.*

---

* NOTA: Véase el prefacio.