EL PUEBLO DE PUERTO RICO, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE SAN JUAN (SECCIÓN PRIMERA), recurrido.

No. 879.—*Sometido:* Diciembre 28, 1932. *Resuelto:* Marzo 27, 1933.

*Hon. Procurador General Charles E. Winter* y *R. Cordovés Arana,* Sub-procurador, abogados del recurrente; el Registrador recurrido compareció por escrito.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

En el certificado expedido de acuerdo con la ley por el Colector de Rentas Internas de San Juan sobre la venta en pública subasta para el cobro de contribuciones de la casa No. 17, de la calle Roosevelt, de Santurce, San Juan, verificada a favor del Pueblo de Puerto Rico el 15 de julio de 1932, entre otras cosas se hizo constar:

"Que el nombre y circumstancias personales del contribuyente moroso son: Manuel Mendía Morales (hoy Sucn.) compuesta de Carmen Palés Vda. de Mendía, mayor de edad, de oficios domésticos; y Rosa Morales madre del contribuyente, todos residentes en la calle Roosevelt No. 17, Santurce, Puerto Rico.

"Que la tasación de los bienes embargados asciende a $8,680.

"Que el importe de contribuciones, recargos y costas adeudadas a 'El Pueblo de Puerto Rico' asciende a $2,254.32.

"Que después de haber sido anotado el embargo de los descritos bienes en el Registro de la Propiedad, se notificó del mismo, con fecha 18 de noviembre de 1931, mediante la entrega de una copia de la notificación de embargo a Josefa Mendía como familiar.

"Que el edicto para la venta de dichos bienes fué publicado en el periódico 'La Correspondencia de Puerto Rico' durante los días 10, 11, 17, 18, 24 y 25 de febrero de 1931 en primera subasta y durante los días 23, 24, 29 y 30 de junio, 5 y 6 de julio de 1932 en segunda subasta.

"Que la propiedad vendida aparece inscrita en el Registro de la Propiedad de San Juan, P. R., a favor de Manuel Mendía Morales, al folio 158 del tomo 69 de San Juan, finca No. 2872, inscripción 3ra.

"Que en cumplimiento de lo que dispone el artículo 315 del Código Político, se ha notificado de la adjudicación de la propiedad descrita en este certificado, a Carmen Palés Vda. de Mendía, y Rosa Morales madre de Mendía como miembros de la Sucesión de Manuel Mendía Morales y al Gerente del 'Bank of Nova Scotia' como tenedor

de un pagaré por la suma de $20,000, todos los cuales aparecen con interés en este remate.''

Presentado el documento para su inscripción, el registrador se negó a verificarla por medio de la siguiente nota:

''Denegada la inscripción de este documento porque la finca adjudicada se halla, aún inscrita a favor de Manuel Mendía Morales, y no de su sucesión, habiéndose tomado en su lugar anotación preventiva por ciento veinte días al folio 163 del tomo 69 de San Juan, finca número 2862, anotación letra C., en la que además se ha consignado el defecto subsanable de no constar él nombre y apellido del gerente del Banco de Nova Scotia, a quien se ha hecho notificación del procedimiento como acreedor.—San Juan, P. R. julio 30 de 1932.''

Recogió el Pueblo el certificado y una vez practicadas las diligencias necesarias volvió a presentarlo con la siguiente certificación adicional del colector:

''Que con el fin de que se pueda inscribir definitivamente a favor de 'El Pueblo de Puerto Rico' la propiedad a que se refiere este documento, se han dejado subsanados los defectos señalados en la anotación preventiva que precede, que fué tomada con fecha 30 de julio de 1932 por un término de ciento veinte días, y al efecto se incluye copia de la declaratoria de herederos del finado Manuel Mendía Morales; y en cuanto al defecto de no expresarse el nombre del Gerente del Bank of Nova Scotia se dejó subsanado a virtud de haberse expresado en la notificación de venta el nombre de dicho Gerente que es el Sr. Alfred E. Griffin.''

La nueva presentación causó la nota contra la cual interpuso el Pueblo este recurso gubernativo. La nota dice:

''DENEGADA la conversión que se solicita de la anotación letra C anterior con vista de la resolución sobre declaratoria de herederos de Manuel Mendía, porque la finca de referencia aparece hoy inscrita a favor de The Bank of Nova Scotia, y tomada anotación preventiva por 120 días, al folio 111 tomo 74 de Santurce Sur, finca 7862 anotación letra C., en cumplimiento de la Resolución del Tribunal Supremo de Puerto Rico en el caso de José González Clemente contra el Registrador de la Propiedad de San Germán de veinte de noviembre de mil novecientos treintiuno (42 D.P.R. 874). San Juan, P. R. octubre 25 de 1932.''

De una certificación acompañada al alegato del registrador transcribimos lo pertinente del asiento que motivó su segunda negativa:

"En la Corte de Distrito de San Juan, caso número quince mil doscientos ochenta y cuatro, se radicó demanda por Bank of Nova Scotia contra la sucesión de Manuel Mendía Morales, compuesta de su madre Rosa Morales y su viuda Carmen Palés, sobre ejecución sumaria de la hipoteca de la inscripción sexta, que grava esta finca y otra, a favor del tenedor o endosatario de un pagaré por noventa mil dollars, respondiendo este inmueble de veinte mil dollars y demás asignaciones. Admitida la solicitud, se ordenó el requerimiento de pago, el cual se diligenció personalmente por el Márshal en dichas interesadas en veinte y dos de julio último, y transcurrido el plazo sin que se efectuase el pago, se ordenó la venta judicial de esta finca a que se refería el requerimiento, en veinte y tres de julio último. Anunciada por edictos, se verificó en diez y nueve del actual, y se adjudicó esta finca al Bank of Nova Scotia, como único postor por la suma de cinco mil dollars, abonada a la reclamación, según así resulta del acta de subasta de la misma fecha, que con los demás documentos se inserta. Se acompaña el documento creditivo del carácter de herederos. En escritura pública el márshal Manuel Náter y Girona, adjudica y vende esta finca al demandante Bank of Nova Scotia, con oficina principal en esta ciudad, representado por su agente Alfred C. Griffin, de conformidad con el acta de subasta .... EN SU VIRTUD, inscribo la finca de este número a favor del Bank of Nova Scotia a título de adjudicación en pago, quedando cancelada por consolidación la hipoteca de la inscripción sexta, y sujeta esta inscripción al resultado de la anotación letra C citada .... San Juan, agosto veinte y nueve de mil novecientos treinta y dos."

A virtud de lo expuesto se concluye que la verdadera cuestión a estudiar y a resolver en este caso es la de si la inscripción hecha a favor del banco constituye o no un obstáculo insuperable para la inscripción del título previamente anotado a favor del Pueblo

La previa negativa a inscribir a favor del Pueblo limitándose el registrador a anotar su derecho por el tiempo que la ley especifica no podremos confirmarla ni revocarla porque no fué recurrida en tiempo para ante nosotros. Tampoco podremos confirmar o revocar la inscripción que hizo el re-

gistrador posteriormente a favor del banco. Tendremos que aceptar esos asientos como algo que ha causado estado en el registro, pero a ellos nos referiremos para fijar su alcance en relación con la nota recurrida y para esclarecer especialmente la ley y la jurisprudencia que llevaron al registrador a verificar la inscripción a favor del banco.

Cuando el banco presentó en el registro su escritura de adjudicación de la casa de que se trata, ya la venta de la misma casa estaba anotada en el registro a favor del Pueblo, venta que se realizó además dentro de un procedimiento notificado al banco de acuerdo con la ley. La anotación tiene fecha julio 30, 1932. La inscripción a nombre del banco, agosto 29, 1932. En la propia inscripción a favor del banco hizo constar el registrador lo que sigue: "Esta finca se halla sujeta. . . al resultado de la anotación letra C. (a favor del Pueblo) por ciento veinte días." Los ciento veinte días no habían transcurrido cuando se verificó la inscripción a favor del banco, ni cuando en 25 de octubre de 1931 se presentó de nuevo el certificado del colector alegando haberse corregido el defecto que impidió su inscripción y se negó la conversión de la anotación en inscripción por el único fundamento de aparecer la finca inscrita a favor del banco.

Expresa el registrador en su nota que actuó en cumplimiento de lo resuelto por esta corte en el caso de *González Clemente* v. *Registrador de la Propiedad*, 42 D.P.R. 874.

En ese caso se resolvió que: "Inscrita una finca a favor de un comprador en subasta vigente anotación preventiva tomada a favor de otro comprador en subasta anterior, procede denegar la conversión de la anotación preventiva en inscripción definitiva conforme al Artículo 17 de la Ley Hipotecaria."

Examinados los hechos consignados en la opinión, aparece que presentado el primer título de adquisición el registrador se negó a inscribirlo el 30 de abril de 1931, tomando anotación por ciento veinte días. La parte afectada por la negativa no retiró el documento para corregir el defecto como en

este caso. Apeló para ante este Tribunal Supremo. Mientras se tramitaba el recurso, otra persona compró la finca en pública subasta celebrada en un procedimiento ejecutivo sumario y el registrador inscribió su título. Esta Corte Suprema decidió el recurso establecido por el primer adquirente en julio 22, 1931, revocando la nota del registrador, y cuando la decisión de esta corte llegó al registro, vigente aún el término de la anotación, el registrador se negó a convertir la anotación en inscripción por hallarse la finca inscrita a favor de otra persona.

El registrador se fundó no sólo en que estaba la finca inscrita a favor de otra persona si que también en que esa otra persona tenía un derecho preferente al del primer adquirente pues la hipoteca que motivó la segunda adquisición estaba inscrita con anterioridad al embargo que dió origen a la primera, pero esta corte restringió el campo de la negativa a la aplicación del artículo 17 de la Ley Hipotecaria, resolviendo que: ''En el recurso contra la negativa a convertir tal anotación preventiva en inscripción definitiva no puede decidirse sobre la legalidad o ilegalidad de la inscripción posterior a la anotación o si tal inscripción fué o no propiamente hecha.''

Aparte de que aquí no se trata de la interposición de un recurso y revocación de la nota, sino de la voluntaria subsanación de la falta que motivó la negativa, el caso es el mismo y estuvo justificado el registrador al actuar en la forma en que lo hizo, correspondiendo a esta corte decidir si confirma o revoca la doctrina del caso de *González Clemente,* supra.

.Tanto el recurrente como el recurrido se refieren en sus alegatos a los artículos 17 y 71 de la Ley Hipotecaria, a las decisiones de esta Corte Suprema en los casos de *Antonsanti* v. *Registrador,* 9 D.P.R. 190; *Hernández* v. *Registrador,* 17 D.P.R. 21 y *Ramis* v. *Registrador,* 18 D.P.R. 76, y al comentarista Morell.

El artículo 17 de la Ley Hipotecaria ha sido aplicado e interpretado repetidas veces por este tribunal. Sienta el básico principio de que ''inscrito o anotado preventivamente

en el registro cualquier título traslativo de dominio o de la posesión de los inmuebles o de los derechos reales impuestos sobre los mismos, no podrá inscribirse o anotarse ningún otro de igual o anterior fecha por el cual se trasmita o grave la propiedad del mismo inmueble o derecho real.'' Va aún más lejos y prescribe que si sólo se hubiera extendido el asiento de presentación, tampoco podrá inscribirse o anotarse ningún otro título de las indicadas circunstancias durante el término de treinta días.

El 71 ha sido también objeto de aplicación e interpretación por parte de esta corte en repetidas ocasiones. Es extenso. Su párrafo primero expresa: ''Los bienes inmuebles o derechos reales anotados podrán ser enajenados o gravados; pero sin perjuicio del derecho de la persona a cuyo favor se haya hecho la anotación.''

También debemos tomar en consideración para la debida resolución de este caso la sección 7 de la Ley sobre recursos contra resoluciones de los registradores, que dice: ''Cuando el registrador niegue alguna inscripción, anotación o cancelación, extenderá anotación preventiva que tendrá efecto legal durante ciento veinte días de su fecha.'', Comp. 1911, p. 451, y que equivale al No. 9 del artículo 42 de la Ley Hipotecaria que prescribe:

''Art. 42. Podrán pedir anotación preventiva de sus respectivos derechos en el Registro público correspondiente:

''*   *   *   *   *   *   *

''9° El que presentare en el oficio del Registro algún título cuya inscripción no pueda hacerse definitivamente por falta de algún requisito subsanable o por imposibilidad del Registrador.''

A partir de la reforma, no se niega en Puerto Rico la inscripción por faltas subsanables. Sólo por faltas que se consideran insubsanables, tomándose entonces la anotación preventiva que antes se tomaba cuando se negaba la inscripción por defectos subsanables. La experiencia demuestra que en gran número de casos las faltas que se consideran insubsanables, pueden en verdad subsanarse y de hecho se subsanan.

En 1905 el Registrador de la Propiedad Sr. José Benedicto se negó a inscribir cierto título de venta de una finca por aparecer del registro que se había extendido anotación preventiva que estaba vigente a favor de otra persona de otro título de venta de la misma finca. Apeló el interesado y esta corte revocó la nota del registrador basándose en lo dispuesto en el artículo 71 de la Ley Hipotecaria. Ése fué el caso de *Antonsanti,* supra, en el que se dijo:

"*Considerando* que no concediéndole la Ley de la Asamblea Legislativa de que se ha hecho mérito otros efectos a las anotaciones preventivas de que se trata, debe serles aplicable el artículo 71 de la Ley Hipotecaria vigente, que es general para todas las anotaciones de aquella clase, y según el cual, 'los bienes inmuebles o derechos reales anotados podrán ser enajenados o gravados; pero sin perjuicio del derecho de la persona, a cuyo favor se haya hecho la anotación;' y por consiguiente, que haciendo aplicación de esta doctrina' al caso presente, no puede haber inconveniente en que se inscriba la escritura de Don Frank Antonsanti, sin perjuicio de los derechos de Don Clemente Fernández que obtuvo la anterior anotación."

Siete años más tarde, en 1912, el tribunal ratificó la doctrina del caso de *Antonsanti,* supra, en el de *Ramis* v. *El Registrador,* 18 D.P.R. 76, así:

"De acuerdo con la doctrina sentada por este tribunal en el recurso de *Antonsanti* v. *El Registrador de la Propiedad,* 9 Dec. de P. R., 190, a las anotaciones preventivas hechas por no ser inscribible un documento en el registro, son aplicables los preceptos del artículo 71 de la Ley Hipotecaria, y por tanto, los bienes inmuebles o derechos reales afectos a una anotación preventiva, podrán enajenarse o gravarse sin perjuicio del derecho de la persona a cuyo favor se haya hecho la anotación, pudiendo, por tanto, inscribirse el título de venta de una finca afecta a tal anotación."

Sin embargo, un año antes, en 1911, habíase resuelto en el caso de *Hernández* v. *Registrador,* 17 D.P.R. 21, lo que sigue:

"Es cierto que la hipoteca sujeta directa e inmediatamente los bienes sobre que se impone, cualquiera que sea su poseedor, al cumplimiento de la obligación, por cuya seguridad fué constituída; pero

en el presente caso al aplicar tal principio para determinar el derecho del recurrente, es necesario considerar que existía una hipoteca preferente a aquélla de la cual deriva su derecho, y era la constituída a favor de El Pueblo de Puerto Rico para garantizar el pago de las contribuciones. No satisfechas éstas, la finca fué vendida y adquirida por Alejandrina Blanco, quien inscribió y anotó, en la forma indicada por el registrador, su derecho en el registro de la propiedad. De acuerdo con la ley, ella, persona distinta de aquélla contra la cual se siguió la ejecución y a nombre de quien otorgó el márshal la escritura, es la que aparece como dueña en el registro, y al apreciarlo así y al negarse a inscribir por tal motivo la escritura de referencia, el registrador no infringió sino que aplicó rectamente el artículo 20 de la Ley Hipotecaria.''

Aunque los hechos son algo distintos, pues en el caso de *Hernández* no sólo se había anotado previamente parte de la finca si que la otra parte se había inscrito a favor de la misma señora Blanco, es lo cierto que se advierte una contradicción en la jurisprudencia establecida.

Parece que en el caso de *Hernández,* supra, se tuvo en cuenta la regla terminante del artículo 17 de la Ley Hipotecaria y en los de *Antonsanti* y *Ramis,* supra, se tendió a dar plena eficacia a lo prescrito en el artículo 71 de la misma ley.

La cuestión no es sencilla en verdad. Diversas son las opiniones de los comentaristas, confuso el criterio de la Dirección General de los Registros de España en las varias resoluciones que ha dictado sobre el particular.

La dificultad principal ha estado a nuestro juicio en querer encontrar una sola regla que rija todas las anotaciones que comprende el artículo 42 de la Ley Hipotecaria.

Al estudiar los comentaristas españoles, no debe perderse de vista que la Ley Hipotecaria sufrió varias modificaciones y que la de Ultramar, que es la nuestra, no era del todo igual a la de la Península. Además, la de Ultramar, en este caso concreto que puede considerarse comprendido en su artículo 42 No. 9, en relación con el 71, fué modificada substancialmente por nuestra ley de 1902 antes citada. Véase *Quintana* v. *Registrador,* 36 D.P.R. 215, 216.

Sin embargo, como el problema a resolver en lo fundamental es el mismo, hemos vuelto a estudiar los comentaristas y a ellos nos referiremos en seguida. Galindo al comenzar su comentario del artículo 71, dice:

"Es consecuencia del carácter provisional de las anotaciones, el que en general no impidan que la persona que ha inscrito a su favor el inmueble o derecho anotado pueda ejercer los actos de dominio que tenga por conveniente; si bien, aunque esos actos se inscriban en el Registro, no perjudicarán el derecho anotado. Así parece que lo ha querido proclamar el artículo 71; pero no lo expresa de un modo terminante, puesto que se limita a consignar que los bienes anotados pueden enajenarse o gravarse y por consiguiente retrocederse, según declara la Res. de 12 En. 1897; y no dice que pueda inscribirse la enajenación o el gravamen; sin perjuicio del derecho de la persona a cuyo favor se hizo la anotación.

"No obstante esta falta de expresión, tenemos por cierto que con arreglo al artículo 71 pueden inscribirse los actos de dominio relativos a bienes anotados, si bien el asiento que se practique no perjudicará al derecho adquirido por el que obtuvo la anotación. (V. Res. de 11 Ag. 1900.)" 2 Galindo. Legislación Hipotecaria, 694.

Morell discute largamente la cuestión y en la página 308 del tomo 3 de su obra, afirma:

"Aunque el 71 sólo dice que los bienes pueden ser enajenados, debe entenderse que también puede ser inscrita esa enajenación, como es lo natural en preceptos hipotecarios."

Sin embargo, en otras partes de su comentario parece que distingue entre las diferentes clases de anotaciones y hay un momento que dice, en la página 306 del tomo 3:

"Apliquemos el precepto al caso más frecuente de anotaciones de derechos reales, al de las anotaciones por defecto. A. vende a B., quien, por ·contener su título faltas subsanables, solicita y obtiene anotación preventiva de su derecho. Subsistente la anotación, ¿quién puede enajenar la finca afectada? Solamente B., puesto que la anotación por defecto produce, mientras subsiste, los mismos efectos que la inscripción. Si A. enajenase, el artículo 17 y el artículo 20 y los 69 y 70 se. opondrían a la inscripción."

Martínez Moreda en el tomo 1, página 91 de sus Comen-

tarios y Jurisprudencia a la Legislación Hipotecaria, es más conciso que Galindo y que Morell y ataca la cuestión con certeza. Dice:

"Como las anotaciones preventivas tienen un carácter provisional no impiden que el dueño que tenga inscrito a su favor el inmueble o derecho real anotado pueda ejercer actos de dominio, enajenándolos o gravándolos, si bien las enajenaciones y gravámenes constituídos no perjudican el derecho del anotante ajeno a la propiedad de dicho inmueble o derecho real. Esto es lo que ha querido decir el artículo 71 de la Ley Hipotecaria, y esta doctrina se halla confirmada por las sentencias de 17 de junio de 1875 y de 30 de diciembre de 1876.

"Lo que no dice dicho artículo es si puede inscribirse la enajenación o el gravamen constituídos por el dueño de los bienes después de hecha la anotación; pero entendemos que sí, porque al conceder el ejercicio de esos actos de dominio es de suponer que no ha de prohibir su inscripción en el registro.

"Con estos antecedentes, nosotros formulamos dicho artículo 71 para su mejor inteligencia en estos términos: El dueño de los bienes inmuebles o derechos reales, aunque se halle anotado algún derecho sobre ellos a favor de otra persona, podrá enajenarlos o gravarlos sin perjuicio del anotante, y dichos actos de dominio serán inscribibles, sin perjudicar tampoco el derecho de aquél.

"Pero esta regla tiene sus excepciones, en razón a que no todas las anotaciones preventivas tienen el mismo origen, ni producen iguales efectos, ni se someten a las mismas condiciones los bienes anotados.

"Así, pues, no es aplicable el artículo 71 respecto de las anotaciones del número 4º. del artículo 42, porque se imponen sobre los bienes por vía de secuestro judicial o con prohibición expresa de enajenarlos. En este caso está comprendida la declaración del artículo 764 de la ley de enjuiciamiento civil referente al secuestro de los bienes inmuebles del demandado rebelde; siendo de advertir que, según resolución de la Dirección de Registros de 30 de enero de 1881, la enajenación posterior a las anotaciones de éstos puede inscribirse cuando procede del ejercicio de una acción hipotecaria por crédito inscrito con anterioridad a la anotación.

"Tampoco es de aplicar el artículo 71 al número 8º. del artículo 42, que trata de las anotaciones de títulos por defectos subsanables, porque el dueño de los bienes y el del derecho anotado es una misma persona.

"Tenemos, pues, que de la regla general del artículo 71 están exceptuadas dichas dos clases de anotaciones preventivas. Todas las

demás que comprende el artículo 42 no impiden la enajenación o el gravamen de los bienes anotados, pero sin perjudicar el derecho del anotante; pues el tercero que contrate, o bien perderá el dominio o derecho real que adquiera después de la anotación, o bien tendrá que soportar la responsabilidad económica que la misma asegure, según sea la clase de las anotaciones.''

Podría, pues, encontrarse apoyo para sostener la doctrina del caso de *Hernández,* supra, en los comentaristas Morell y Martínez Moreda. También en el precepto terminante del artículo 17 y en la naturaleza misma de la anotación. Una cosa no debe venderse a dos personas. Aun para el caso de la doble venta, la propia ley ordena que debe considerarse como dueño el que primero la inscriba, y se ha decidido que a los efectos de la aplicación del precepto basta la presentación del título en el registro, no ya su anotación. *Flores* v. *Arroyo,* 43 D.P.R. 97.

Sin embargo, creemos que en la práctica la aplicación de la doctrina sería un obstáculo a la libre contratación, especialmente teniendo en cuenta la reforma fundamental de nuestra ley que ordena la inscripción aunque existan faltas subsanables y sólo la niega, produciéndose entonces la anotación, cuando el registrador estime que es insubsanable la falta.

Si el documento está bien calificado, la nota será confirmada en caso de recurrirse, o en caso de retirarse el documento no podrá la falta corregirse y ningún efecto tendrá la anotación, y no deben obstaculizarse durante un término relativamente largo, como lo es el de 120 días, las ulteriores transacciones que puedan verificarse sobre la finca anotada.

A virtud de lo expuesto deben prevalecer las decisiones de *Antonsanti* y *Ramis,* supra, y quedar derogada la de *Hernández,* supra, en todo lo que a ellas se oponga.

Continuaremos ahora nuestro estudio en cuanto a nuevos asientos con respecto al derecho anotado previamente que se soliciten después de la ulterior inscripción.

Estudiadas la ley, la jurisprudencia y los comentaristas se

encuentra que no hay conflicto con respecto a que las transacciones ulteriores se verifican sin perjuicio de la persona a cuyo favor se hace la anotación. Parece lo lógico entonces que la inscripción de la transacción ulterior no impidiera la plena inscripción del derecho anotado en los casos procedentes, sin necesidad de tener que acudir a los tribunales en solicitud de que ordenen su cancelación. Sin embargo, no es así.

Conocemos lo resuelto por esta corte en el caso de *González Clemente,* supra. La consecuencia de esa resolución es que no obstante su anotación, la persona que la obtiene se ve obligada para hacer valer su derecho en toda su plenitud a acudir a los tribunales para que éstos decreten la cancelación de la inscripción ulterior.

Oigamos lo que dice Morell sobre el particular y por medio de él al Tribunal Supremo de España y a la Dirección General de los Registros. Es así:

"*Enajenaciones posteriores a la anotación.*—A este caso se refiere el precepto del artículo 71.

"La enajenación o el gravamen se han realizado no sólo después de decretado el embargo, sino después de extendida la anotación. El tercer adquirente conoce al adquirir e inscribir, la responsabilidad que afecta a los bienes, y ha de adquirirlos con ese gravamen. La enajenación se inscribe, pero sin perjuicio del derecho de la persona a cuyo favor se hizo la anotación.

"¿Cómo se concilian los intereses o derechos de los terceros adquirentes con los del anotante? Hay casos en que es difícil la solución. Pero debemos fijarnos en que el artículo 71 no pretende que se respete el derecho de la persona a cuyo favor se inscribe la enajenación o el gravamen. No se coarta la libre facultad del dueño para disponer de lo suyo, pero el adquirente ha de atenerse a las consecuencias posibles de que le avisa la anotación.

"Examinemos la jurisprudencia relativa a esta materia.

"Hay, en primer lugar, ciertas enajenaciones y extinciones del derecho anotado, que, aunque posteriores a la anotación, son de carácter preferente, sin que el acreedor que anotó pueda evitarlo, y que, por tanto, se realizan en su perjuicio. Así, según la Sentencia de 1º. de febrero de 1886, es preferente el derecho adquirido por el comprador, a consecuencia de una hipoteca inscrita con anterioridad

al embargo, al que lleva en sí la anotación. La anotación de embargo del derecho de retraer, dicen las Resoluciones de 18 de mayo y 18 de junio de 1898, no pueden estorbar la consumación de la venta. Lo mismo ha de entenderse respecto al derecho del censualista, para obtener el cobro de pensiones atrasadas, o para reincorporarse la finca en caso de comiso, y al derecho del Estado para obtener el cobro de las contribuciones de la última anualidad, y al ejercicio de acciones resolutorias derivadas de actos inscritos con anterioridad, anulando también el derecho del anotante, la extinción en virtud de causas legales, del derecho sobre que se impuso la anotación, muerte del usufructuario, si se embargó el derecho de usufructo, cumplimiento del plazo, etc.

"Aparte lo expuesto, puede el deudor, en cualquier estado del juicio, vender la finca o el derecho que se le embargó, pero sin perjuicio del anotante, sin que valga alegar que consentida la sentencia de remate, la venta es forzosa, e impide la voluntaria, pues el precepto del artículo 71 es terminante (Resolución de 6 de septiembre de 1892) ; aparte de que no es indispensable siempre para obtener el cobro llegar a la enajenación del inmueble, porque puede obtenerse el cobro con las rentas (Resolución de 26 de octubre de 1898) ; y puede verificarse el pago por el deudor o por un tercero.

"En general, aplican el artículo 71 las Sentencias de 28 de mayo de 1874 y 30 de diciembre de 1876, y las Resoluciones de 25 de noviembre de 1875, 26 de julio de 1895 y 11 de agosto de 1900.

"Con arreglo a la última, el derecho que tiene un acreedor con relación a las fincas embargadas, queda garantido por virtud de la anotación del embargo, porque dicha anotación subsiste mientras no sea legalmente cancelada, correspondiendo por ello al acreedor la debida preferencia sobre todos los demás créditos que haya podido contraer el deudor con posterioridad a la misma, y porque las enajenaciones de los inmuebles anotados y los gravámenes impuestos sobre éstos no pueden perjudicar el derecho adquirido por el Estado, con arreglo a los artículos 44 y 71 de la Ley Hipotecaria, sin que, por otra parte, semejante derecho tenga eficacia para impedir la inscripción de los actos de enajenación y gravamen, *ni para producir la cancelación* de las inscripciones practicadas con posterioridad a la anotación del embargo.

"Pero el gravamen o la enajenación realizados voluntariamente por el deudor, no estorbó nunca la continuación del procedimiento. Llega, pues, el caso de la venta hecha judicialmente a un tercero, o de la adjudicación de los bienes al acreedor, y estos adquirentes pretenden inscribir su derecho. Aquí se presenta el verdadero conflicto,

puesto que existen, si hubo una anterior enajenación voluntaria, dos dueños, uno que funda su derecho en la inscripción realizada al amparo de la ley, y otro que se funda en su anotación anterior a la venta y en el precepto del artículo 71, que le dice que su derecho no puede sufrir perjuicio, a pesar de aquella enajenación. ¿Se cancelará la inscripción de la primera venta? ¿Se obligará al acreedor o al rematante a entablar un nuevo juicio para obtener el reconocimiento de su preferencia?

"Con arreglo a las palabras de la exposición de motivos de la ley primitiva, a las Sentencias del Tribunal Supremo de 22 de enero de 1869, 28 de marzo de 1874, 17 de junio de 1875, 30 de diciembre de 1876 y otras, a las Resoluciones de 25 de noviembre de 1875, 12 de mayo de 1886 y 22 de marzo de 1889, y a la opinión de la mayoría de los expositores, se entendió siempre, al interpretar el artículo 71, en relación con el 44 de la ley, que garantizaban únicamente las consecuencias de un juicio, sin crear ni declarar derecho alguno, ni alterar la naturaleza de las obligaciones, ni convertir en real e hipotecaria la acción que careciese de este carácter. En su consecuencia, la venta de la finca aun inscrita después, impedía la venta hecha posteriormente por el Juzgado a consecuencia del juicio, porque el Juzgado representa al dueño, y el dueño no puede enajenar dos veces.

" 'No permiten los principios de derecho civil, decía Escosura, que la enajenación de un inmueble, hecha por persona con capacidad legal para ello, deje de producir sus efectos naturales respecto al que compra y los produzca respecto a otros. Si la venta es válida (y esto no puede negarse) su efecto es que el comprador adquiera el dominio respecto a todos y contra todos pueda defenderlo.'

" ' No permiten los principios de derecho hipotecario que la inscripción de una venta, cuya validez declara expresamente, pueda cancelarse, no por nulidad del contrato ni del título, sino porque otra escritura posterior otorgada por el mismo enajenante (puesto que el Juez lo representa en rebeldía), transmita a otra persona lo que consta en el Registro que no es suyo.'

" 'No permiten las leyes de procedimiento que cuando hay choque de derecho o de intereses privados, pueda resolverse la legitimidad del título de dominio del uno y la nulidad del título que se le opone, sin que sea éste vencido en juicio plenario.'

" 'No permiten las leyes que marcan las atribuciones de los funcionarios públicos, que los Registradores por sí y ante sí resuelvan cuestiones de dominio que están reservadas a los Tribunales; ni que cancelen una inscripción de un contrato, por la manifestación de una sola de las partes, en otro contrato que contradice al primero.'

" 'No permiten los preceptos de los mismos artículos 20 y 71 que en virtud de los de aquél se deroguen los de éste, cuando giran en órbita independiente, declarando el primero que el dominio no puede transmitirse por quien no resulte dueño, y limitándose el segundo a estatuir: que el gravamen sobre ese dominio permanece vivo, aun cuando el dominio se transfiera.'

"Pero por muy racional que sea esta interpretación, y por fundadas que sean tales razones, es lo cierto que el que adquiere con buena o mala fe la finca o el derecho con posterioridad a la anotación, conoce el peligro y puede evitarlo pagando la cantidad con que fué gravado ese derecho o esa finca, y no es justo que sabiéndolo y sólo por permanecer en la inacción, se obligue al acreedor a pedir y obtener la rescisión de la enajenación como fraudulenta, o a entablar un nuevo juicio contra el adquirente, con el temor de que al final, vuelva a encontrarse en iguales circunstancias y tenga que volver a empezar.

"Claro es que el Registrador tiene bien marcada en la ley su línea de conducta, debiendo limitarse a cumplir los artículos 20 y 71. Inscrita la finca a nombre de tercera persona, o presentado el título de la enajenación hecha voluntariamente por el deudor, ha de denegar la inscripción de la venta o de la adjudicación judicial, pues él ni da ni quita derechos, ni es el llamado a resolver el conflicto. Pero la situación jurídica creada era violenta e insostenible, y necesitaba una solución."

No obstante lo que dice el comentarista en el párrafo antepenúltimo, lo que expresa en el último puede invocarse para sostener el caso de *González Clemente,* supra.

Volvemos a repetir que la dificultad de llegar a una justa decisión es que las anotaciones no son todas de igual naturaleza. La Ley Hipotecaria nuestra reconoció esa diferencia y adicionó lo que sigue al artículo 71:

"Si los bienes inmuebles o derechos reales anotados preventivamente, a tenor del artículo 42, números 2°. y 3°., fuesen adjudicados al demandante en virtud de sentencia recaída en el pleito, o llegase el caso de anunciarlos en pública subasta, se notificará la adjudicación o el anuncio al que durante el litigio hubiese adquirido tales bienes o derechos.

"Dicha notificación deberá practicarse a instancia del actor, dictada que sea la sentencia firme de adjudicación o antes de verificarse el remate en el procedimiento de apremio, debiendo observarse lo que

prescriben los artículos 260 al 269 de la Ley de Enjuiciamiento Civil vigente en las Antillas, 244 al 253 de la que rige en Filipinas.

"Hecha la notificación a que se refiere el párrafo anterior, podrá el notificado librar los bienes de que se trate, pagando la cantidad consignada en la anotación para principal y costas, sin que se entienda obligado a satisfacer por este último concepto mayor suma que la consignada en la anotación. Si no lo hiciere en el término de diez días, se procederá a cancelar en el Registro la inscripción de su dominio, así como cualquiera otra que se hubiera extendido después de la anotación, a cuyo efecto, y a instancia del rematante o del adjudicatario, se despachará el oportuno mandamiento al Registrador de la propiedad.

"Si la enajenación otorgada e inscrita durante el pleito fuere relativa a finca cuya propiedad se hubiere reclamado en virtud de demanda anotada preventivamente, con arreglo al número 1º. del artículo 42 de esta ley, será título hábil para que en su virtud se cancele aquella inscripción, un testimonio de la sentencia firme favorable al dominio del demandante.

"Las sentencias ejecutorias en que se imponga la pena de interdicción, o se declare la incapacidad para administrar de una persona, o se modifique su aptitud civil en cuanto a la libre disposición de sus bienes, serán documentos bastantes para cancelar las inscripciones de enajenaciones otorgadas durante la tramitación del juicio por el declarado incapaz, siempre que la demanda origen de la providencia hubiere sido anotada preventivamente en virtud de lo que ordena el artículo 42 en su número 5º."

Esa adición no figuraba en la ley de la Península que comentaban Galindo y Morell y es en verdad decisiva para el caso de las anotaciones a que se refiere. En *Arroyo* v. *Zavala*, 40 D.P.R. 269 se interpretó y aplicó lo dispuesto en sus tres primeros párrafos, así:

"¿Sería preciso que el que adquirió en remate tuviera que seguir un pleito contra el comprador que adquirió durante el procedimiento, y en el tiempo en que el inmueble estaba legalmente sujeto a la subasta y remate? La respuesta en la afirmativa conduciría a dos males graves: al absurdo, y a la injusticia de parte de la ley.

"Si examinamos el artículo 71 de la Ley Hipotecaria, que en un caso análogo, da al que compró pendiente el litigio el derecho de liberar, pero previene que si no lo hace en el tiempo fijado, se cancele su inscripción; si tenemos presente que en la sección 2 de la Ley

para ejecución de sentencias (sección 5296 Compilación de 1911) se ha dispuesto que la orden para la ejecución de la hipoteca 'tendrá toda la fuerza y efecto de un auto ordenando la posesión, tanto entre las partes interesadas en dicho juicio como entre éstas y cualesquiera otras personas que reclamasen en dicho juicio en virtud de cualquier derecho adquirido durante el mismo'; y si, en fin, recordamos la facultad que el artículo 36 del Código de Enjuiciamiento Civil da al juez para adoptar un procedimiento por el que pueda cumplirse la ley; si vemos esto, podemos declarar que la solución de un conflicto de esta clase aplicando el mismo procedimiento del artículo 71 de la Ley Hipotecaria, haciendo la notificación al comprador, y si en el término de diez días no libera la finca, y ordenando la cancelación de su inscripción en el registro es un procedimiento legal, y equitativo.''

Y en *Bou* v. *Registrador,* 40 D.P.R. 527, como sigue:

''Presentada para su inscripción en el Registro de la Propiedad ·de San Juan la escritura de venta judicial otorgada por Eduardo Urrutia, márshal, a favor de Adela Bou viuda de Alvarez, el registrador se negó a ello 'porque la finca vendida se halla inscrita a favor de Agustín Hernández Mena, persona distinta de los demandados.'

''Sucedió que la compradora Adela Bou reclamó por la vía judicial la suma de $2,500 que le debían Amparo Escapa y Alfonso Ocasio y cuyo pago estaba garantizado por los deudores con hipoteca sobre cierta finca situada en Santurce, San Juan.

''No sólo se expidió por el registrador la certificación necesaria para iniciar el procedimiento sumarísimo seguido, si que además por vía de aseguramiento de la sentencia que pudiera dictarse se embargó la finca hipotecada anotándose el embargo en el registro.

''Después de expedida la certificación, de iniciado el procedimiento ejecutivo hipotecario y de anotado el embargo, se inscribió en el registro la venta de la finca hipotecada, hecha por ́sus dueños los deudores a favor de Agustín Hernández Mena.

''El procedimiento ejecutivo siguió adelante y la finca hipotecada y embargada fué vendida en pública subasta, adjudicándosela el márshal a nombre de los deudores a la acreedora por la suma de $2,000. Y ya hemos dicho que presentada la escritura en el registro el registrador se negó a inscribirla por estar ya registrada la finca vendida a nombre de otra persona distinta de los deudores.

''Basta lo expuesto para concluir que de acuerdo con la jurisprudencia recientemente sentada por esta Corte en el caso de *Arroyo* v. *Zavala y Cruz,* 40 D.P.R. 269, Agustín Hernández Mena no es la 'persona distinta' que, según la ley, pueda impedir la inscripción.''

Pero no obstante llegarse a esa conclusión, se confirmó la nota denegatoria. Se transcribió en la opinión íntegro el ar- tículo 71 de la Ley Hipotecaria y se dijo:

"Para los fines del registro, no hay duda alguna de que la inscripción que se haga a favor de ese comprador viene sujeta a no perjudicar al que anotó con prioridad su derecho, en cuanto al montante de ese derecho. Pero el comprador durante el litigio puede, según ese mismo precepto legal, liberar los bienes anotados mediante el pago del importe del gravamen. Es la obligación del actor o demandante, obligación que se trasmite al adjudicatario extraño que se subroga en los derechos de dicho actor o demandante, la de notificar al comprador durante el litigio, para que éste pueda liberar la finca en el término de diez días que se le concede por la ley, mediante el pago del gravamen anotado. Y si tal obligación de notificar no se cumple, no puede reclamarse la cancelación de la inscripción hecha a favor del comprador durante el litigio, cancelación absolutamente indispensable para que pueda inscribirse la adjudicación o la escritura hecha en consecuencia de la subasta, ya que no pueden coexistir dos inscripciones de propiedad de la misma finca, antagónicas y contrarias.

"Presentado el documento de venta hecha por el márshal, y encontrándose inscrita la finca a favor del que la compró, durante el litigio, el registrador hace aplicación estricta del artículo 20 de la Ley Hipotecaria, y deniega la inscripción. Y, a nuestro entender, él no puede, por el momento, hacer otra cosa. Si el actor o demandante en el caso en que se hizo la adjudicación quiere hacer firme su derecho, debe acudir, al procedimiento del artículo 71 de la Ley Hipotecaria, y pedir la notificación; si el adquirente paga dentro del término legal, nada ha perdido aquel demandante, si no lo hace, su inscripción se cancela, y el obstáculo queda suprimido."

En el caso de *Dávila* v. *Registrador*, 24 D.P.R. 707, tuvo esta corte oportunidad de interpretar y aplicar los dos últimos párrafos de la adición, así:

"No vemos razón por la cual los recurrentes no tienen derecho a que su escritura sea registrada en su totalidad. Los traspasos e inscripciones a favor del acreedor y de sus compradores se hicieron con posterioridad a la anotación de la demanda en el registro y se hicieron con completo conocimiento de la pendencia del pleito y sujetos a sus resultas. El objeto de la anotación de la demanda es avisar a las demás personas de que si adquieren después algún derecho en los bie-

nes anotados lo perderán si el anotante obtiene éxito en la demanda que la originó, y si bien el artículo 20 de la Ley Hipotecaria en que parece apoyarse el registrador para negar la inscripción de parte de la finca por aparecer inscrita a favor de terceras personas, dispone que para inscribir o anotar los títulos en que se transfiera o grave el dominio o la posesión de bienes inmuebles o derechos reales deberá constar previamente inscrito o anotado el derecho de la persona que otorgue o en cuyo nombre se haga la transmisión o gravamen, este precepto se refiere a las inscripciones en general mas no a las que puedan hacerse como consecuencia de un pleito anotado en el registro, porque para estos casos es de aplicación el artículo 71 que permitiendo la enajenación o gravamen de los bienes inmuebles o derechos reales anotados, sin perjuicio del derecho de la persona a cuyo favor se haya hecho la anotación, dispone como consecuencia en uno de sus párrafos que si se hubiere inscrito, será título hábil para que se cancele el testimonio de la sentencia firme favorable al demandante, declaración que tiene su desarrollo en el artículo 142 del reglamento para su ejecución, igual al 76 de España, al disponer la manera cómo la anotación preventiva ha de convertirse en inscripción al adquirir definitivamente el derecho anotado la persona a cuyo favor se había hecho la anotación. Véanse las Resoluciones de la Dirección General de los Registros de España de 10 de septiembre de 1881 y 19 de enero de 1897.

"Siendo, pues, inscribible la escritura que motiva el recurso, la nota recurrida debe ser revocada y ordenarse al registrador que proceda a su inscripción convirtiendo la anotación preventiva en inscripción definitiva cancelando las inscripciones posteriores a la anotación preventiva."

Véanse además los casos de *Sucesión Franceschi* v. *Registrador,* 42 D.P.R. 854; *Díaz Mediavilla* v. *Registrador,* 39 D.P.R. 114; *Quintana* v. *Registrador,* 36 D.P.R. 215, y *Bello et al.* v. *Registrador,* 31 D.P.R. 118.

Pero el caso de autos—anotación por haberse negado la inscripción por defecto calificado de insubsanable—no está comprendido en ninguno de los párrafos de la adición, y constituiría legislación judicial el que esta corte ordenara que procede la conversión de la anotación en inscripción definitiva quedando a virtud del nuevo asiento cancelada la inscripción verificada después de la anotación. Si resolviéramos que pro-

cedía inscribir la conversión sin que ésta produjera el efecto de cancelar la inscripción anterior, montaría a tanto como a ordenar deliberadamente la subsistencia de inscripciones contradictorias, lo que se opone enteramente a los fines del registro.

A menos, pues, que la Legislatura enmiende la ley prescribiendo el procedimiento que debe seguirse para los casos del artículo 42 no cubiertos por la adición al artículo 71 de la Ley Hipotecaria, en situaciones como las que presentan los casos de *González Clemente,* supra, y éste que estudiamos y resolvemos, no obstante lo claro que pueda parecer el derecho de los anotantes y la prioridad de.sus gestiones en el Registro, están imposibilitados de obtener en éste una inscripción definitiva y completa hasta que obtengan en un pleito adversario la decisión de la corte de justicia competente declarando la cancelación de la inscripción hecha con posteridad a la anotación.

La regla reconocida y aplicada en el caso de *González Clemente,* supra, queda en pie, y en su consecuencia *debe confirmarse y se confirma la nota recurrida.*