José González Cádiz, demandante y apelado, *v.* Vicente Ortiz López y su esposa Paula Ortiz, demandados, y El Pueblo de Puerto Rico, apelante.

Nos. 6399 y 6400.—*Sometidos:* Diciembre 6, 1934. *Resueltos:* Diciembre 24, 1934.

850

*Hon. Procurador General Benjamin J. Horton y R. Cordovés Arana, Subprocurador;* abogados del apelante; *González Fagundo & González, Jr.,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

Vicente Ortiz López y su esposa compraron una casa a Santiago y José González Cádiz por el precio de $7,500, de los cuales pagaron parte, constituyendo hipoteca sobre dicho inmueble para el pago de la cantidad aplazada a favor del referido José González Cádiz por el término de tres años, a vencer en primero de marzo de 1929. Esta hipoteca fué inscrita en el Registro de la Propiedad de Humacao.

El Pueblo de Puerto Rico embargó la referida casa para el cobro de contribuciones adeudadas por Vicente Ortiz López, anotándose el embargo en el registro de la propiedad el día 13 de noviembre de 1931, según hace constar el colector de rentas internas en el certificado de compra que expidiera en 15 de marzo de 1932. El referido funcionario certifica que cumplidos los requisitos legales la mencionada finca se ad-

judicó al Pueblo de Puerto Rico con fecha 26 de enero del mismo año en el procedimiento de apremio para el pago de contribuciones sobre ingresos correspondientes al año 1924, adeudadas por Vicente Ortiz López.

Se expresa además en dicho certificado que la venta del inmueble en cuestión se anunció mediante edictos que se publicaron en la prensa durante los días 10, 11, 17, 18, 24 y 25 de febrero en primera subasta, 19, 20, 26 y 27 de octubre y 2 y 3 de noviembre de 1931 en segunda subasta, y 4, 5, 11, 12, 17 y 19 de enero de 1932 en tercera subasta, habiéndose notificado a Vicente Ortiz López como dueño de la casa y a José González Cádiz como acreedor hipotecario de la adjudicación hecha a favor del Pueblo de Puerto Rico, a fin de que pudieran ejercitar el derecho de redención que les concede el artículo 352 del Código Político. La venta a favor del Pueblo de Puerto Rico se inscribió en el registro de la propiedad en diciembre de 1932.

En octubre 3 del mismo año, José González Cádiz inició ante la Corte de Distrito de Humacao el cobro de su crédito hipotecario por la vía sumaria, acompañando una certificación del registro de la propiedad, donde se hacía constar que la hipoteca no se hallaba cancelada ni estaba pendiente de cancelación y que no existía ninguna otra carga o gravamen sobre la finca con anterioridad o posterioridad a la relacionada hipoteca, y que la misma se hallaba entonces inscrita a favor de don Vicente Ortiz López, casado con doña Paula Ortiz. En virtud del procedimiento iniciado la casa fué vendida en pública subasta y adjudicada al acreedor hipotecario José González Cádiz.

Expidióse por el márshal escritura de venta judicial en 12 de enero de 1933, y habiéndose inscrito la casa a nombre del Pueblo de Puerto Rico en 8 de diciembre de 1932, el acreedor ejecutante presentó moción a la corte alegando que mientras se tramitaba su pleito de ejecución por la vía sumaria, El Pueblo de Puerto Rico había anotado su derecho de venta de la finca hipotecada en el Registro de la Propiedad de Hu-

macao mediante la presentación de un certificado al efecto y que al tiempo de constituirse la hipoteca no se había hecho publicación alguna de contribuciones que adeudara la propiedad hipotecada, ni que adeudaran los demandados por contribuciones sobre la referida propiedad ni por contribuciones de ingresos ni por ningún otro concepto y que el compareciente no tuvo conocimiento alguno de la referida venta hecha a favor del Pueblo de Puerto Rico hasta el preciso momento en que llevó para su inscripción en el registro la escritura de venta judicial otorgada a su nombre por el márshal.

Basándose en estas alegaciones el acreedor ejecutante solicitó que se ordenara por la corte, a tenor de lo dispuesto en el artículo 71 de la Ley Hipotecaria, la notificación del Pueblo de Puerto Rico, quien aparecía con título de dominio inscrito en el registro sobre la finca ejecutada, para que se sirviera, si lo creía conveniente, liberar la finca pagando las cantidades de que la misma respondía, bajo apercibimiento de que si no lo verificaba, se procedería a la cancelación de su inscripción de dominio en el registro de la propiedad. Expidióse la orden de acuerdo con lo solicitado, y habiendo pedido su anulación El Pueblo de Puerto Rico, la corte, luego de oír a las partes, mantuvo en pie la orden expedida, basándose en que el procedimiento administrativo de apremio y venta de la finca hipotecada fué un acto claramente *ultra vires,* carente por completo de toda legalidad, porque se inició después de expirados cinco años desde que se rindió o dejó de rendirse la declaración.

Alegó el Pueblo de Puerto Rico en su moción solicitando la nulidad (a) que la finca en cuestión le había sido adjudicada desde el 26 de enero de 1932 y que adquirió el dominio absoluto de la misma desde el 15 de marzo de 1933, por no haberse ejercitado el derecho de redención; (b) que al radicarse el escrito inicial en el procedimiento ejecutivo sumario aparecía del registro un embargo anotado sobre la ameritada finca a favor del Pueblo de Puerto Rico que no fué notificado de la orden de requerimiento como acreedor posterior;

(*c*) que al tiempo de iniciárse el juicio ejecutivo sumario la finca era de su propiedad, hecho que le constaba al acreedor hipotecario desde antes del día 15 de marzo de 1932, por lo que todas las diligencias en dicho procedimiento debieron entenderse directamente con El Pueblo de Puerto Rico como subrogado en la persona del deudor Vicente Ortiz López; y (*d*) que siendo el crédito por contribuciones un gravamen preferente al crédito hipotecario y habiendo El Pueblo de Puerto Rico adquirido la finca cerca de un año antes de que se iniciara el cobro de la hipoteca, no era un comprador *pendente lite* y sí un tercero, a tenor de lo dispuesto en la Ley Hipotecaria, no pudiendo aplicársele las disposiciones del artículo 71 de la referida ley. La corte inferior, a solicitud de José González Cádiz, no obstante haber sido apelada su orden requiriendo al Pueblo de Puerto Rico para liberar la finca pagando las cantidades consignadas en el auto de requerimiento, bajo apercibimiento de cancelar la inscripción de su dominio si así no lo hiciere, ordenó la cancelación del título inscrito a favor del Pueblo de Puerto Rico.

Los tres primeros errores atribuídos a la cote inferior son los siguientes:

"1. La Corte de Distrito erró al considerar al apelante como comprador *pendente lite,* y por tanto sujeto a las obligaciones que a tales compradores dispone el artículo 71 de la Ley Hipotecaria.

"2. La Corte de Distrito erró al aplicar a este caso las disposiciones del artículo 71 de la Ley Hipotecaria.

"3. La orden de la Corte de Distrito de 28 de febrero de 1933 y su resolución dejando en pie dicha orden, de fecha esta última de abril 29 de 1933, son contrarias a la ley y a los hechos."

■■ De acuerdo con el artículo 71 de la Ley Hipotecaria se podrán enajenar o gravar los bienes inmuebles o derechos reales anotados, pero la venta o gravamen se hará sin perjuicio del derecho de la persona a cuyo favor se haya hecho la anotación. Si los bienes inmuebles o derechos reales anotados preventivamente fuesen adjudicados al demandante en virtud de sentencia recaída en el pleito, o llegase el caso de

anunciarlos en pública subasta, se. notificará la adjudicación o el anuncio al que durante el litigio hubiese adquirido tales bienes o derechos. Hecha la notificación, podrá el notificado liberar los bienes de que se trate, pagando la cantidad consignada en la anotación para principal y costas. Si no lo hiciere en el término de diez días, se procederá a cancelar en el registro la inscripción de su dominio, así como cualquiera otra que se hubiera extendido después de la anotación, a cuyo efecto y a instancia del rematante o del adjudicatario, se despachará el oportuno mandamiento al Registrador de la Propiedad. Ha decidido este tribunal que cuando se enajena o grava la propiedad hipotecada, durante la tramitación de un procedimiento sumarísimo para el cobro de un crédito hipotecario, es de aplicación el artículo 71 de la Ley Hipotecaria. Esta cuestión fué ampliamente discutida por esta corte en la opinión que a nombre de la misma emitiera el Hon. Juez Texidor en el caso de *Arroyo* v. *Zavala,* 40 D.P.R. 269. En este caso Ángel Arroyo siguió ante la Corte de Distrito de San Juan un procedimiento ejecutivo hipotecario contra Gabriel Zavala en cobro de $679.46, intereses y costas. Se libró el requerimiento al deudor, éste no pagó, y se dictó sentencia de remate, ordenándose la subasta de la finca hipotecada, la que se llevó a cabo, adjudicándose la finca al acreedor. Durante el término del requerimiento, que se hizo en noviembre 16 de 1927, el deudor, por escritura de diciembre 13 de 1927, vendió a Petrona Cruz Vda. de Jacobs la finca hipotecada. De esta escritura el ejecutante no aparece haber tenido noticia. Éste supo, después de la subasta, de la existencia de tal escritura, cuando aún el márshal no le había otorgado la suya, ni puesto en posesión de la finca, porque acudió a la corte para que se notificara a Petrona Cruz y se le apercibiera de que si en el plazo de diez días no pagaba el importe de la hipoteca y liberaba la finca, se ordenaría la cancelación de su inscripción de compra; se ordenó así por la corte, se hizo la notificación, y trascurridos más de treinta días sin que pagara, el ejecutante pidió a la corte la orden y manda-

miento de cancelación, que se concedió. Más tarde la corte. dejó sin efecto la orden de cancelación y apeló el ejecutante. La corte, en este caso, se expresó así:

"Si examinamos el artículo 71 de la Ley Hipotecaria, que en un caso análogo da al que compró *pendiente el litigio* el derecho de liberar, pero previene que si no lo hace en el tiempo fijado se cancele su inscripción; si tenemos presente que en la sección 2 de la Ley para la ejecución de sentencias (sección 5296, compilación de 1911) se ha dispuesto que la orden para la ejecución de la hipoteca 'tendrá toda la fuerza y efecto de un auto ordenando la posesión, tanto entre las partes interesadas en dicho juicio como entre éstas y cualesquiera otras personas que reclamasen en dicho juicio en virtud de cualquier derecho adquirido durante el mismo;' y si, en fin, recordamos la facultad que el artículo 36 del Código de Enjuiciamiento Civil da al Juez para adoptar un procedimiento por el que pueda cumplirse la ley; si vemos esto, podemos declarar que la solución de un conflicto de esta clase, aplicando el mismo procedimiento del artículo 71 de la Ley Hipotecaria, haciendo la notificación al comprador, y si en el término de diez días no libera la finca, y ordenando la cancelación de su inscripción en el Registro es un procedimiento legal y equitativo." (Bastardillas nuestras.)

Observa el abogado de El Pueblo de Puerto Rico que la corte en el caso citado se limita única y exclusivamente al caso de un comprador *pendente lite,* y arguye que no puede ser de otro modo, porque el artículo 71 se refiere a la enajenación o gravamen de bienes inmuebles o derechos reales anotados. Entiende dicho abogado que la parte apelada en este caso no puede acogerse al remedio prescrito en el artículo referido, porque ha quedado plenamente demostrado que el apelante no es un acreedor *pendente lite,* ya que los bienes pasaron a ser de su propiedad antes de que se iniciara el procedimiento ejecutivo hipotecario y que el acreedor hipotecario tuvo conocimiento, con anterioridad a esta fecha, de que la finca había sido adjudicada al Pueblo de Puerto Rico.

Los autos demuestran que el escrito inicial en el procedimiento sumario se radicó el día 3 de octubre de 1932, y que

la subasta se llevó a cabo el 12 de enero de 1933, adjudicándose la casa objeto de la hipoteca al acreedor ejecutante. El Pueblo de Puerto Rico adquirió la finca en 26 de enero de 1932, expidiéndose por el colector de rentas internas el certificado de compra en 15 de marzo del mismo año. No puede sostenerse que el apelante adquiriera mientras se tramitaba el procedimiento ejecutivo sumario y es claro que el apelado no puede ampararse en las disposiciones del artículo .71 del cuerpo legal anteriormente citado. La parte apelada arguye que no ha sido probado que El Pueblo de Puerto Rico adquiriese la finca en pública subasta con fecha anterior a la presentación y radicación del ejecutivo hipotecario, porque no aparece en el registro de la propiedad anotación alguna de embargo trabado por El Pueblo de Puerto Rico. El apelante, por el contrario, dice que el embargo fué anotado y cita la fecha de su anotación. No puede negarse que se trata de un hecho de facilísima comprobación que pudo y puede ser aclarado con absoluta certeza mediante una investigación en el registro de la propiedad. El Registrador certifica que la hipoteca no había sido cancelada y que no existía otra carga o gravamen sobre la finca y el colector de rentas internas afirma en el certificado de compra que el embargo fué anotado en 13 de noviembre de 1931. Nos hallamos en presencia de dos certificaciones: la del registrador, que niega en términos generales la existencia de cargas o gravámenes, y la del colector de rentas que afirma específicamente la anotación del embargo. La certificación del registrador que se acompaña con el escrito inicial debe contener, cuando hay gravámenes, copia literal de los mismos. Parece natural que cuando no los hay, lo haga constar así. El certificado de compra expedido por el Colector de Rentas Internas constituye evidencia prima facie de los hechos en el mismo relatados, según lo dispone expresamente la ley. Pero sin parar mientes en el valor probatorio de la negativa general o de la afirmación específica de estas certificaciones en cuanto al embargo, existe un hecho que no ha sido controvertido y es la

adjudicación de la finca al Pueblo de Puerto Rico y su notificación al acreedor hipotecario por lo menos seis meses antes de iniciarse el procedimiento sumario. La expedición del certificado de compra, donde se hace constar esta notificación, tuvo lugar en el mes de marzo de 1932, y el procedimiento ejecutivo se inició en octubre del mismo año. Algún tiempo después, en el mes de diciembre, el Registrador inscribió la finca a nombre del Pueblo de Puerto Rico. El acreedor hipotecario tuvo conocimiento de que el inmueble había pasado a poder de una tercera persona desde antes de iniciarse judicialmente el cobro de su crédito por la vía sumaria y es por esta razón que el apelante alega que las diligencias judiciales debieron entenderse con él de acuerdo con el artículo 129 de la Ley Hipoecaria. No hay duda alguna en cuanto a la fecha en que la propiedad fué adquirida por El Pueblo de Puerto Rico. La validez de su título no es cuestión que puede ser discutida dentro del procedimiento que prescribe el artículo 71 que venimos comentando. Los hechos demuestran claramente que el apelante no adquirió la propiedad durante la tramitación del procedimiento sumario, y por esta sola razón, de no existir otras, habría que revocar las resoluciones de la corte inferior, toda vez que la misma actuó sin autoridad al expedir las órdenes de notificación y al ordenar la cancelación en el registro de la inscripción del inmueble a favor del apelante. Dudamos mucho de que pueda aplicarse el referido artículo al Pueblo de Puerto Rico, aun cuando hubiese adquirido la propiedad después de iniciado el procedimiento sumario; pero siendo innecesario resolver esta cuestión, nos abstenemos en esta ocasión de emitir nuestro juicio sobre la misma.

Se alega además que la corte *a quo* erró al declarar prescrito el derecho del Pueblo de Puerto Rico a cobrar las contribuciones y al resolver que el procedimiento de embargo y venta de la finca para el cobro de dichas contribuciones fué un acto *ultra vires* y carente de validez legal. Se arguye que la corte inferior carece de facultades para anular, en un inci-

dente seguido de acuerdo con las disposiciones del artículo 71 de la Ley Hipotecaria, indirectamente, *motu proprio,* y sin oír al Pueblo de Puerto Rico, el procedimiento administrativo en cobro de contribuciones seguido contra don Vicente Ortiz López; y se añade que tampoco podía el tribunal inferior oficiosamente levantar, para beneficio del acreedor hipotecario, la cuestión de prescripción.

No es necesario que nos detengamos a discutir la cuestión suscitada, ya que, resueltos en favor del apelante los tres primeros errores, se impone necesariamente la revocación de las resoluciones apeladas. Nos parece, sin embargo, que dentro de las disposiciones del artículo 71 de la Ley Hipotecaria no pueden plantearse y discutirse cuestiones de esta naturaleza, propias más bien para ser estudiadas y resueltas en un juicio declarativo.

En la última parte de su alegato el apelante impugna la jurisdicción de la corte inferior para actuar en este caso, porque El Pueblo de Puerto Rico no prestó su consentimiento para ser demandado en un incidente de esta naturaleza. Tampoco creemos necesario resolver esta cuestión, que no deja de ser interesante, porque como ya hemos dicho, la corte inferior no tuvo autoridad para expedir la orden apelada y cancelar la inscripción de dominio a favor del Pueblo de Puerto Rico.

Por las razones expuestas, se revocan las resoluciones de 28 de febrero y 29 de abril de 1933, y se ordena la anulación de la orden cancelando la inscripción en el registro de la propiedad, debiendo restituirse dicha inscripción en el registro mediante orden expedida por el tribunal inferior.