CATALINO RAMOS GÓMEZ, demandante, contrademandado y apelante, *v.* PEDRO RÍOS RODRÍGUEZ, demandado, contrademandante y apelado.

Número 11302.

*Sometido:* 1 de junio de 1955. *Resuelto:* 16 de agosto de 1955.

*J. M. Toro Nazario,* abogado del apelante; *Gloria M. Mimoso de Laguna,* abogada del apelado.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

Catalino Ramos Gómez presentó demanda de reivindicación y otros extremos contra Pedro Ríos Rodríguez ante el Tribunal Superior, Sala de Caguas, reclamando ser dueño de una finca de seis cuerdas sita en el Barrio Borinquen de Caguas y la cual viene poseyendo el demandado. Contestó éste la demanda alegando ser el verdadero y único dueño de la mencionada finca y a la vez contrademandó solicitando se ordenara la cancelación de la inscripción del título que en el Registro de la Propiedad aparece a favor del demandante.

Las partes sometieron el caso por las admisiones y la prueba presentada en una conferencia con antelación al juicio y además por la prueba documental presentada en una acción de desahucio seguida entre las mismas partes ante el mismo tribunal. Posteriormente la corte dictó sentencia declarando sin lugar la demanda y con lugar la contrademanda, luego de formular las siguientes:

"Conclusiones de Hechos

"1.—Que el demandante Catalino Ramos Gómez tiene inscrita a su favor, al folio 191 vuelto del tomo 159 de Caguas, finca núm. 4825, en el Registro de la Propiedad de Caguas, Puerto Rico, la finca que se describe así:

"Rústica: Predio de terreno compuesto de seis cuerdas, equivalentes a dos hectáreas, treinta y cinco áreas y ochenta y dos centiáreas, sita en barrio Borinquen del término municipal de Caguas, Puerto Rico, lindante por el este, con la Sucesión Tirado;

por el norte y oeste, con Miguel Ayala, y por el sur, con Cirilo Ríos. Comprende dos casas de maderas del país y extranjeras, con techos de zinc.

"2.—Según el Registro de la Propiedad de Caguas, el demandante adquirió la finca antes descrita por herencia de su padre fallecido, don Prudencio Ramos Rodríguez, quien a su vez la adquirió por compra de don Gerardo Calderón, según escritura número 15, de fecha 29 de marzo de 1930, otorgada en Caguas, Puerto Rico, ante el notario don José A. Vargas, e inscrita en el Registro de la Propiedad al folio 189 vuelto del tomo 159 de Caguas, finca núm. 4825, el día 19 de febrero de 1931.

"3.—Don Prudencio Ramos Rodríguez adquirió la finca sujeta a una hipoteca que gravaba la misma a favor de don Julio Rivas Soto y que constaba inscrita en el Registro de la Propiedad de Caguas, Puerto Rico, al folio 240 del tomo 147 de Caguas, con fecha 25 de enero de 1930, y cuya fecha de vencimiento era el 24 de julio de 1930.

"4.—Vencida la hipoteca y no habiéndose pagado la misma, el acreedor hipotecario, Julio Rivas Soto, procedió a radicar acción de Ejecución de Hipoteca el 4 de septiembre de 1930 en el antiguo Tribunal de Distrito de Humacao, y notificó a don Domingo García y a su esposa doña Joaquina Rivera, quienes del Registro de la Propiedad aparecían como únicos dueños. Posteriormente y tramitándose ya la acción de ejecución de hipoteca, se notificó a don Gerardo Calderón, quien inscribió su título el día 5 de septiembre de 1930, habiendo adquirido por compra de los esposos García–Rivera, el día 27 de febrero de 1930, por escritura núm. 20, otorgada en Caguas, Puerto Rico, ante el notario Rafael Cintrón Lastra.

"5.—Don Julio Rivas Soto adquirió la finca en subasta pública el día 6 de febrero de 1931, y el día 9 de febrero de 1931, el alguacil del antiguo Tribunal de Distrito de Humacao, otorgó la escritura núm. 26, sobre Venta Judicial, a favor de don Julio Rivas Soto, en Humacao, Puerto Rico, ante el notario don Antonio L. López.

"6.—Don Julio Rivas Soto presentó para su inscripción en el Registro de la Propiedad de Caguas, Puerto Rico, el día 6 de junio de 1931 su escritura de venta judicial y su inscripción le fué denegada por hallarse inscrita la finca objeto de dicha venta a favor de don Prudencio Ramos, quien como ya dijimos antes, la inscribió el día 19 de febrero de 1931.

"7.—Sin inscribir su título don Julio Rivas Soto toma posesión de la finca y vendió a don Domingo García y a doña Joaquina Rivera la finca por escritura núm. 1, otorgada en Caguas, Puerto Rico, ante el notario don Julio Reguero González, el día 3 de enero de 1933.

"8.—Luego don Domingo García y su esposa doña Joaquina Rivera vendieron a don Pedro Ríos Rodríguez, el demandado-contrademandante, la finca por escritura núm. 30 de fecha 21 de julio de 1936, otorgada en Caguas, Puerto Rico, ante el notario don Ángel Fernández Sánchez, quien la ha venido poseyendo desde esa fecha; ha pagado contribuciones y consiguió la exención de pago de contribuciones por la misma."

En sus conclusiones de derecho el tribunal resolvió: (a) que el procedimiento ejecutivo hipotecario seguido por Julio Rivas Soto acreedor hipotecario y de quien el demandado trae título era válido y no estaba viciado de nulidad, (b) que el art. 71 de la Ley Hipotecaria no es aplicable a este caso toda vez que el procedimiento sobre ejecución de hipoteca se inició con anterioridad a la fecha en que se inscribió en el Registro el título del causante del demandante, y (c) que además el demandado había adquirido la finca por prescripción ordinaria y que por tal motivo la acción reivindicatoria estaba prescrita.

En este recurso el demandante-contrademandado-apelante señala la comisión de 31 errores. De estos errores el apelante discute conjuntamente los primeros veintitrés al discutir el primero. En ellos se ataca, principalmente la admisión en evidencia de la escritura de venta judicial otorgada por el márshal en el procedimiento ejecutivo hipotecario a favor del ejecutante Julio Rivas Soto, así como las escrituras posteriores de traspaso derivadas de aquélla, por el fundamento de que ninguna de dichas escrituras fueron inscritas en el Registro de la Propiedad.

Esta contención del apelante es insostenible. El art. 389 de la Ley Hipotecaria invocado por éste, dispone:

"Artículo 389. Desde que empiece a regir esta ley no se admitirá en los juzgados y tribunales ordinarios y especiales, en los consejos y en las oficinas del Gobierno, ningún documento o

escritura de que no se haya tomado razón en el registro por el cual se constituyeren, transmitieren, reconocieren, modificaren o extinguieren derechos sujetos a inscripción, según la misma ley, si el objeto de la presentación fuese hacer efectivo en perjuicio de tercero el derecho que debió ser inscrito.

"No obstante lo dispuesto en el párrafo anterior, podrá admitirse en perjuicio de tercero el documento no inscrito y que debió serlo, si el objeto de la presentación fuese únicamente corroborar otro título posterior que hubiese sido inscrito.

"También podrá admitirse el expresado documento cuando se presente para pedir la declaración de nulidad y consiguiente cancelación de algún asiento que impida verificar la inscripción de aquel documento."

Las disposiciones del primer párrafo de este artículo no son aplicables. El demandante apelante no es un tercero hipotecario. Cuando su causante adquirió la finca, ésta estaba afecta a una hipoteca debidamente inscrita en el Registro. Ni el apelante ni su causante se encontraban, en relación con dicha hipoteca, en mejor o distinta situación que el deudor hipotecario, de quien ellos traen títulos. Todo lo que hicieron fué subrogarse en lugar del trasmitente. Por lo tanto, respecto a la ejecución del gravamen hipotecario inscrito, el demandante y apelante no puede alegar condición de tercero. *Arroyo* v. *Zavala*, 40 D.P.R. 269.

De otra parte, conforme dispone el tercer párrafo del citado artículo, el documento no inscrito puede admitirse cuando se presente para pedir la declaración de nulidad y consiguiente cancelación de algún asiento que impida la inscripción del documento. Precisamente lo que hizo el demandado-apelado fué pedir en su contrademanda la nulidad y consiguiente cancelación del asiento practicado en el Registro a favor del apelante que impedía la inscripción de su título. Para ese propósito era admisible el documento o documentos no inscritos. Véanse las Sentencias del Tribunal Supremo de España de 29 de marzo y 18 de abril de 1921. Más aún, el propio apelante alegó en su demanda que el título del apelado era nulo y solicitó la consiguiente declaración judicial a

ese efecto. No vemos cómo el tribunal sentenciador hubiera podido considerar esta cuestión sin tener ante sí, como prueba admitida, el título cuya validez se impugnaba.

En vista de lo expuesto debemos concluir que los primeros veintitrés errores no fueron cometidos.

■ Por el error número veinticuatro se impugna la segunda conclusión de derecho formulada por el tribunal sentenciador. Ésta es al efecto de que el art. 71 de la Ley Hipotecaria no era aplicable en el procedimiento ejecutivo hipotecario seguido por el acreedor hipotecario debido a que el causante del apelante no era un comprador *pendente lite*.

El procedimiento ejecutivo hipotecario se inició el día 4 de septiembre de 1930. El causante del demandante-apelante adquirió la finca hipotecada el día 29 de marzo de 1930, o sea, con anterioridad a la fecha en que se inició el ejecutivo hipotecario y no fué hasta el día 19 de febrero de 1931 que inscribió su título en el Registro, o sea, cuando ya había finalizado el procedimiento ejecutivo. De este procedimiento se notificó a Domingo García y a su esposa Joaquina Rivera, quienes del Registro de la Propiedad aparecían como únicos dueños. Posteriormente y tramitándose ya la acción de ejecución de hipoteca se notificó a Gerardo Calderón, quien inscribió su título el día 5 de septiembre de 1930. Por tanto, la corte a quo no erró al estimar que el causante del apelante no era un adquirente *pendente lite*, y que en su consecuencia el procedimiento ejecutivo hipotecario no era nulo por falta de cumplimiento del art. 71 de la Ley Hipotecaria. *González* v. *Ortiz y El Pueblo*, 47 D.P.R. 849; *Luengo* v. *Acosta*, 56 D.P.R. 917; *Vizcarrondo* v. *Luengo*, 63 D.P.R. 202.

■ Por el error vigésimosexto se ataca el pronunciamiento referente a la prescripción. El tribunal a quo resolvió que el demandante-apelante había adquirido el dominio sobre la finca en litigio por prescripción ordinaria.

Los hechos incontrovertidos establecen que en 9 de febrero de 1931 se otorgó la escritura de venta judicial a favor del acreedor hipotecario Julio Rivas Soto. Cerca de cuatro meses

después, o sea, el 6 de junio del mismo año, Rivas Soto presentó en el Registro la indicada escritura de venta judicial y su inscripción le fué denegada por hallarse la finca inscrita a favor de Prudencio Ramos, causante del apelante, desde el 19 de febrero de 1931.[1] Rivas Soto había tomado posesión de la susodicha finca y en enero 3 de 1933 la vendió a Domingo García y su esposa Joaquina Rivera y luego éstos la vendieron en 21 de julio de 1936 al aquí demandado-apelado Pedro Ríos Rodríguez, quien la ha venido poseyendo desde entonces. La demanda de reivindicación fué radicada en marzo de 1953. El apelado, por tanto, ha poseído la finca por más de diez años desde que la adquirió en 1936 hasta la fecha de la interposición de la demanda.

Declara el art. 1830 del Código Civil (ed. 1930) que "por la prescripción se adquieren, de la manera y con las condiciones determinadas en la ley, el dominio y demás derechos reales" y conforme al art. 1857 del mismo Código, el dominio y demás derechos reales sobre bienes inmuebles "se prescriben por la posesión durante diez años entre presentes y veinte entre ausentes, con buena fe y justo título". Aceptando que en el aquí demandado y apelado concurre el requisito de la posesión continuada por el término legal e igualmente el requisito del justo título, no podemos convenir con el tribunal sentenciador en que su posesión haya sido de buena fe. Si ésta falta no hay prescripción ordinaria. *Saurí* v. *Echevarría Vda. Subirá*, 51 D.P.R. 73. "La buena fe del poseedor—declara el art. 1850 del Código Civil—consiste en la creencia de que la persona de quien recibió la cosa era dueña de ella y podía transmitir su dominio." Cuando el apelado compró, sabía por el Registro, que el vendedor ni la persona de quien éste traía título, podían transmitir el dominio de la

---

[1] En *Hernández* v. *Registrador*, 17 D.P.R. 21 y en *Viera* v. *Registrador*, 22 D.P.R. 579, resolvimos que de acuerdo con el art. 20 de la Ley Hipotecaria, debe denegarse la inscripción de una escritura de venta de una propiedad otorgada por el márshal en procedimiento hipotecario, cuando la referida propiedad está ya inscrita a nombre de persona distinta de los demandados a cuyo nombre se hizo la venta.

cosa por encontrarse aquél inscrito a nombre de persona distinta [el causante del demandante y apelante] y atribuyéndosele ese conocimiento por razón de que él no podía ignorar lo que el Registro hacía público, (²) su posesión no puede considerarse de buena fe. En su consecuencia, el tribunal a quò cometió error al resolver que el apelado había adquirido el dominio de la finca en litigio por prescripción.

■ Hemos dicho antes que el causante del demandante-apelante no era un adquirente *pendente lite* y que por lo tanto no era de aplicación el art. 71 de la Ley Hipotecaria. Respecto a los adquirentes anteriores dispone el art. 129 del mismo cuerpo legal, lo siguiente:

"Artículo ·129.—Si antes de que el acreedor haga efectivo su derecho sobre la finca hipotecada pasare ésta a manos de un tercer poseedor, se entenderán directamente con éste todas las diligencias prevenidas en el artículo anterior, como subrogado en la personalidad del deudor."

Pero como el acreedor hipotecario no tuvo conocimiento por el Registro de que la finca hipotecada había pasado a manos del demandante-apelante o de su causante, no pudieron entenderse con éstos las diligencias a que se refiere el art. 128 de la Ley. (³)

■ Nos encontramos pues, frente a un caso de doble venta. Una, la efectuada por el Márshal a nombre del deudor

---

(²) "El Registro de la Propiedad es, en efecto, el único medio verdaderamente eficaz que acredita la preexistencia del derecho, y lo hace realmente público." 1 Morell, Legislación Hipotecaria, pág. 59. La publicidad del Registro "Significa, en primer lugar, la promulgación o notificación a todos de la existencia legal del hecho o del derecho de que se trata, a fin de que sea por todos conocido y respetado, convertir en público lo que es privado; y, en segundo lugar, el derecho de todos para acudir al Registro, a fin de conocer aquello que les obliga o puede interesarles." Morell, ob. cit., pág. 346.

(³) El art. 170 del Reglamento dispone que el requerimiento de pago se hará a los que según la certificación del Registro estuvieren en posesión de los bienes hipotecados, ora los conserve el deudor, ora se hayan trasmitido a tercero en todo o en parte.

hipotecario. (¹)    De esta venta arranca el título del demandado-apelado no inscrito en el Registro.    Y la otra, la efectuada por el propio dueño de la finca y deudor hipotecario a un tercero quien a su vez la traspasó al causante del demandante-apelante e inscrita en el Registro.    Los derechos de los respectivos compradores, deberán resolverse por lo tanto, con vista a las disposiciones del art. 1362 del Código Civil, (⁵) conforme al cual si una misma cosa inmueble se hubiese vendido a diferentes compradores, "la propiedad pertenecerá al adquirente que antes la haya inscrito en el registro".    Este precepto determina una preferencia en relación con la prioridad de inscripción en el Registro de la Propiedad.    Sin embargo, tal preferencia está condicionada a que haya mediado buena fe. Cuando falta este requisito debe estimarse ineficaz la preferencia y aplicarse, en su consecuencia, las otras normas que sean pertinentes del art. 1362 ya copiado en el escolio (5). *Saurí* v. *Echevarría Vda. Subirá*, 51 D.P.R. 73; *Pueblo* v. *Hernández*, 16 D.P.R. 266; Sentencias del Tribunal Supremo de España de 13 de mayo de 1908, de 29 de noviembre de 1928 y de 31 de octubre de 1929.

La corte a quo no hizo pronunciamiento alguno al efecto de que en la compra hecha por el causante del demandante-apelante hubiera mediado mala fe.    El apelado no suscitó esta cuestión en sus alegaciones, ni tampoco en el récord hay prueba de mala fe en la transacción de compra efectuada por el causante del demandante-apelante.    En su consecuencia,

---

(⁴)Una escritura de compraventa otorgada por la Autoridad Judicial no confiere al comprador privilegios o facultades que excedan de las comunes u ordinarias a todo contrato de compraventa.    Sentencia del Tribunal Supremo de España de 26 de diciembre de 1910.

(⁵)Dicho artículo dispone:

"Artículo 1362.—Si una misma cosa se hubiese vendido a diferentes compradores, la propiedad se transferirá a la persona que primero haya tomado posesión de ella con buena fe, si fuere mueble.

"Si fuere inmueble, la propiedad pertenecerá al adquirente que antes la haya inscrito en el registro.

"Cuando no haya inscripción, pertenecerá la propiedad a quien de buena fe sea primero en la posesión; y faltando ésta, a quien presente título de fecha más antigua, siempre que haya buena fe."

forzoso es concluir que siendo éste un adquirente de buena fe, su título inscrito goza de preferencia sobre el título no inscrito del apelado de conformidad con lo dispuesto en el citado art. 1362 del Código Civil. Al no resolverlo así, la corte sentenciadora también incurrió en error. ([6])

([6]) Nos damos cuenta de que los derechos de un acreedor hipotecario que recurra al procedimiento ejecutivo sumario de la Ley Hipotecaria para hacer efectivo su crédito, puede, en un caso como el presente, quedar sin protección. La necesidad de introducir algunas enmiendas a nuestra Ley Hipotecaria para evitar semejante anomalía jurídica y dar mayor garantía a la efectividad de ese procedimiento judicial fué ya apuntada por el Profesor don Luis Muñoz Morales, en su obra Derecho Hipotecario, Tomo II, página 260, en la siguiente forma:

"*b*. En el segundo supuesto, o sea cuando la venta se verifica después de iniciado el procedimiento, dice el art. 175 del Reglamento Hipotecario en su último apartado:

" 'Si durante la sustanciación del expediente pasare la finca o alguna de las fincas hipotecadas a manos de otro poseedor, éste, acreditando la inscripción de su título, podrá pedir que se le exhiban los autos en la Escribanía, y el Juez lo acordará, sin paralizar el curso del expediente, entendiéndose con él las diligencias ulteriores, como subrogado en el lugar del causante.'

"Dados los trámites de este procedimiento sumario no alcanzamos a ver qué aplicación práctica puede tener lo prescrito en este artículo del Reglamento, pues la única diligencia que ha de practicarse con el deudor es la del requerimiento de pago, y *ninguna otra*. Claro está que el comprador puede acudir a la secretaría de la Corte y examinar los autos, como puede hacerlo hoy cualquier interesado, pero no puede comparecer ni intervenir en ellos en ninguna forma, como no sea para consignar la cantidad reclamada, antes de verificarse la subasta, y pedir que se ordene la cancelación de la hipoteca. Pero el acreedor hipotecario puede ignorar e ignora esa venta o traspaso si el comprador buenamente no le notifica de ello; y si se da el caso de que el comprador inscribe su título antes de que se verifique el remate o adjudicación y venta de la finca, entonces surge el conflicto cuando la escritura de venta judicial se presenta al Registro para su inscripción.

"No ocurriría cuestión alguna, si en el Registro existiere alguna constancia de haberse iniciado el procedimiento para el cobro de hipoteca, y este caso aparece previsto en la nueva Ley Hipotecaria de España (art. 131 regla 4a. No. 2) en que refiriéndose a la certificación del Registro que debe acompañarse al escrito inicial, se dispone que el Registrador hará constar por nota marginal que ha expedido esta certificación expresando su fecha y la existencia del procedimiento a que se refiere.

"Con ese mismo fin y aceptando ese precedente el Director de la Comisión Codificadora, en el proyecto de Código Hipotecario presentado a la Legislatura de Puerto Rico, en las sesiones de 1927 y 1929 (P. del S. núm. 121, y P. del S. núm. 77) propuso la siguiente adición al art. 169 del Reglamento Hipotecario:

En vista de todo lo expuesto anteriormente, la sentencia apelada debe ser revocada y en su lugar debe dictarse otra declarando con lugar la demanda. Sin embargo, como la corte sentenciadora no formuló conclusiones en cuanto a la segunda y la tercera causa de acción ejercitadas en la demanda, el caso debe ser devuelto al tribunal de origen para que una vez haya formulado dichas conclusiones, dicte sentencia de conformidad con los términos de esta opinión.

*Se revoca la sentencia apelada y se devuelve el caso al tribunal de origen para los correspondientes procedimientos ulteriores.*

El Juez Asociado Sr. Belaval disintió.

---

" 'El Registrador hará constar por nota marginal que ha expedido esa certificación expresando su fecha y el fin para que se solicita, y cuya anotación quedará cancelada, si dentro de los quince días de su fecha no se hiciere constar la presentación de la demanda ante la Corte de Distrito mediante certificación que expidiere el Secretario de la Corte . . . Esta anotación servirá de notificación a cualquier tercer poseedor que posteriormente adquiriera la finca hipotecada.' (Véase proyecto Cód. Hip., página 104).

"Como consecuencia de esa enmienda se propuso también adicionar al artículo 129 de la Ley el siguiente párrafo final:

" 'Pero si el traspaso se verificare por el deudor después que el acreedor hubiere iniciado el procedimiento judicial para la ejecución de la hipoteca, entonces será suficiente aviso al tercer poseedor la anotación de la certificación y demanda a que se refiere el artículo anterior, y la inscripción que se hubiere hecho a su favor quedará cancelada para que pueda inscribirse el título de adjudicación o remate judicial.' (Proyecto Cód. Hip. art. 200, pág. 107).

"Explicando el fundamento de esas enmiendas dijo el Director en su informe a la Comisión Codificadora y a la Asamblea Legislativa, lo siguiente: (página 15):

" 'Se ordena al Registrador que haga constar por nota marginal la expedición de la certificación que libre para iniciar el procedimiento sumario, y esto con el fin de dar aviso, a cualquier adquiriente posterior, y evitar que se burle la acción del acreedor con el traspaso que haga el deudor después de requerido de pago. Hoy se dan casos de que cuando el acreedor llega al trámite de subasta se encuentra que el deudor ha traspasado la finca a un tercero que la ha inscrito, y a quien no se ha hecho notificación ni ha sido parte en el procedimiento porque el ejecutante lo ignoraba, y con esto se impide legalmente la inscripción de la finca al postor que la adquirió en remate.' 'Esta enmienda trae consigo la del art. 128 de la Ley'.

"Tales enmiendas fueron discutidas y aceptadas por el Comité Jurídico

del Senado en su informe rendido con fecha 4 de abril de 1929. . (Véase informe Comité, pág. 5).

"Pero aquel proyecto no pudo ser discutido por nuestra Legislatura, y después de tantos años nada se ha hecho sobre esa y otras enmiendas necesarias a la Ley Hipotecaria, ni tampoco parece que ha llamado la atención aquella modificación que sobre este particular se hizo en la Ley Española del año 1909 a pesar de haber transcurrido treintisiete años (hasta 1946)."

Las enmiendas propuestas en los años 1927 y 1929 no cubrirían el caso del tercer poseedor que adquiere antes de iniciarse el procedimiento ejecutivo pero que no inscribe su título hasta después de iniciado o terminado aquél. Con miras a remediar esta laguna, sería conveniente que se hicieran las correspondientes enmiendas a otros artículos de la Ley.